[No. G037959. Fourth Dist., Div. Three. Aug. 14, 2008.]

In re the Marriage of DAWN EILEEN and PAUL ELWOOD MOSLEY.
DAWN EILEEN MOSLEY, Respondent, v.
PAUL ELWOOD MOSLEY, Appellant.

COUNSEL

Snell & Wilmer and Richard A. Derevan for Appellant.

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller and Shara Beral Witkin for Respondent.

OPINION

**MOORE, J.**—Dawn and Paul Mosley, both lawyers, dissolved their marriage.[1] At the time of dissolution, Paul was a real estate partner at a large law firm and had a hefty income, and Dawn was the stay-at-home mother of their five children. Several years later, with the downturn in the real estate market, the law firm decided to pare down its real estate practice and Paul was terminated. He then took an in-house position with a homebuilder that paid a fraction of his former income as a base salary, together with the possibility of a substantial year-end bonus. Because a significant portion of Paul's income was paid, if at all, as a discretionary year-end bonus, Paul sought a modification of the existing spousal and child support orders on the basis of a change in circumstances. The court denied the request and Paul appeals.

The evidence showed that the year after he left the law firm, Paul still had a large total income, given his base salary, year-end bonus and a one-time signing bonus, and also that he paid very substantial spousal and child support to Dawn that year. However, where he once made $447,150 per year with the possibility of a bonus, he now made $205,000 per year with the possibility of a bonus—a discretionary bonus to be paid if at all by a homebuilder grappling with a depressed real estate market. The evidence also showed that almost all of Paul's net monthly take-home pay from his base salary was required to pay the existing support obligations, and that he had to borrow his monthly living expenses for most of the year, in the hopes of receiving a year-end bonus that would permit him to repay the debt, before embarking on the same desperate cycle again the subsequent calendar year.

The court's finding that there was no change in circumstances, and thus no basis for a modification of support obligations, was not supported by substantial evidence. Under the particular circumstances of this case, it was an abuse of discretion for the court to base the support obligations on the predicted receipt of a huge bonus that might never materialize.

---

[1] "Hereafter, we refer to the parties by their first names, as a convenience to the reader. We do not intend this informality to reflect a lack of respect. [Citation.]" (*In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1513, fn. 2 [47 Cal.Rptr.3d 183].)

We reverse the findings and order after hearing and remand the matter for a redetermination of support obligations consistent with the views expressed herein, taking into consideration Paul's current base salary as well as the possible imputation of income to Dawn, who is a licensed attorney and whose children are nearly grown. While the total amount of spousal and child support that Paul pays ultimately may be the same as it was previously, he should not be left to borrow 11 months of the year.

I

FACTS

A. *Introduction*

Dawn and Paul were married in 1982. Their children were born in 1984, 1986, 1988, 1990, and 1993, respectively. Dawn filed a petition for dissolution of marriage in 1999 and a judgment as to status was entered that year. A judgment on reserved issues was entered in 2002. Dawn and Paul were awarded joint legal and physical custody of the children.

B. *2002 Judgment on Reserved Issues*

In the 2002 judgment, the court determined Paul's gross income to be $447,150 per year for 2001. After deductions for a mandatory retirement contribution, partnership note payments, business expenses, and phantom income, the court found that Paul had a monthly income of $32,175 before taxes. The 2002 judgment stated that Paul's cash flow for the year 2002 and thereafter would have to be recalculated.

The court found that Paul's timeshare with the children was 32 percent. It ordered him to pay child support of $6,810 per month. The court also ordered Paul to pay certain additional amounts with respect to child support, including 21 percent of all income exceeding $447,150 per year.[2] In addition, the 2002 judgment provided a formula for reducing the amount of child support as the various children reached the age of maturity.

With respect to spousal support, the 2002 judgment ordered Paul to pay Dawn $4,100 per month, plus 15 percent of Paul's income exceeding $447,150 per year. The 2002 judgment also contained a finding that the

---

[2] In its May 30, 2001 minute order, the court referenced "additional earnings by [Paul] that would be characterized as bonuses and are not necessarily paid or necessarily recurrent." It also stated that "21% was discussed as the appropriate standard in this matter relative to child support and 15% relative to spousal support." Thus, it appears the court contemplated possible bonus income over and above the $447,150.

support awarded was insufficient to allow Dawn and the children to maintain the lifestyle established during marriage, but also precluded Paul from maintaining that lifestyle.

## C. *2003 Stipulation and Order*

A stipulation and order for modification of judgment was filed in 2003. It reflected that Paul's timeshare with the children had changed to 20 percent. It also stated that the oldest child was graduating from high school that month. Paul was ordered to pay Dawn $6,839 per month in child support, with a specified stepdown as the children reached maturity. The order retained Paul's obligation to pay additional spousal support and child support if his income exceeded $447,150 per year, albeit with a different method of calculation than set out in the 2002 judgment. In addition to the foregoing, the court ordered Paul to pay one-half of the undergraduate education expenses for each child and one-half of the expenses necessary for each child to embark upon a mission for The Church of Jesus Christ of Latter-day Saints.

## D. *2006 Order to Show Cause Regarding Modification*

In January 2006, Paul filed an order to show cause regarding modification of child and spousal support. Due to his change in employment, Paul requested that child support be reduced to guideline support for the three youngest children, who were still living at home, and that spousal support be reduced to $993 per month plus a percentage of his bonus.

In a declaration supporting his order to show cause, Paul represented that his income at the law firm had been $529,652 in the year 2000, $616,697 in the year 2001, $689,215 in the year 2002, and $753,631 in the year 2003. However, Paul also stated that the law firm had decided to phase out its real estate practice. As a result, he took an in-house position with a homebuilder, beginning in February 2005.

Paul declared that his new position paid a base salary of $205,000, with a net take-home pay of $10,000 to $11,000 per month. He explained that after making the total monthly support payments of $10,047 to Dawn,[3] he was left with less than $1,000 for his own monthly living expenses. He also stated that he had the children approximately 38 percent of the time.

Paul further explained that he was eligible to receive a discretionary bonus of up to 150 percent of his base salary, dependent upon both his performance

---

[3] The $10,047 figure consisted of $4,100 in spousal support and $5,947 in child support, for the three children still at home at that time.

and the success of the housing industry. Any bonus would be determined only at the end of the calendar year.

In his declaration, Paul said that the 2002 judgment contained a *Gavron* order warning Dawn of her duty to make a reasonable good faith effort to become self-supporting.[4] He also reminded the court that Dawn is a licensed attorney, who had been a law review editor at Brigham Young University's J. Reuben Clark Law School and who had started her legal career at Latham & Watkins. Although Dawn's license had been inactive since 1994 and she had stopped practicing law to care for the five children, Paul presented a vocational examination report reflecting that she should be able to earn at least $78,000 per year if she worked only six hours per day, or substantially more if she worked full time. Paul requested that the court impute an income of $78,000 to Dawn for the time being, with a trial to follow on her earning capacity.

In her responsive declaration, Dawn stated that her monthly expenses were approximately $10,000 per month and that she was already living below the marital standard of living. Although Dawn acknowledged that she is a licensed attorney who had once worked for Latham & Watkins, she reminded the court that she had terminated her employment with the agreement of Paul so that she could devote herself to caring for the children, who were ages 21, 19, 18, 15 and 13 at the time of her declaration. She said that staying home to raise the children was consistent with their faith as devout Mormons. Dawn opposed Paul's requests to impute $78,000 per year in income to her and to alter the support payments in consideration of Paul's discretionary bonus situation.

The court denied Paul's requested relief. Paul appeals.

II

DISCUSSION

A. *Statement of Decision*

The court found that Paul had a fixed annual salary of $205,000, with a possible discretionary bonus of up to an additional 150 percent of that amount. Any bonus awarded would be paid 75 percent in December and 25 percent the following March. It also found that Paul was indeed awarded a bonus in 2005, that $257,000 was paid in December 2005 as 75 percent of the bonus awarded, and that $85,000 was paid in March 2006 as the

---

[4] See *In re Marriage of Gavron* (1988) 203 Cal.App.3d 705 [250 Cal.Rptr. 148].

remaining 25 percent. In addition, the court found that Paul had received a one-time signing bonus of $50,000 from the new employer, plus certain funds from his former law firm.[5]

Paul's December 30, 2005 income and expense declaration reflected income for 2005 of $448,392, including the new base salary and the December 2005 bonus. Considering this income and expense declaration, the court found that Paul's 2005 income exceeded the annual income figure stated in the 2002 judgment. Consequently, the court concluded that there had been no change in circumstances to support a reduction in either spousal or child support.

On another point, the court rejected the request to impute income to Dawn, stating that it would not be in the best interests of the children to have her return to work. Furthermore, while the court acknowledged that some evidence had been introduced to show that Dawn might command a salary of about $95,000 as a starting lawyer, it concluded that the imputation of income would be improper because it had not been shown that a job was actually available to Dawn.

## B. *Arguments*

### (1) *Introduction*

Paul argues that the court abused its discretion in failing to reduce his support obligations. More particularly, he contends the evidence demonstrated that there was a material change in his circumstances, in terms of both his income and the timeshare with the children, and that a failure to change the support orders would leave him impoverished. He also argues the court erred in failing to impute income to Dawn. In addition, Paul says the court erred in failing to make a number of other findings he requested. We address these contentions in turn.

### (2) *Change in circumstances*

Dawn insists that Paul has suffered no change in circumstances in terms of his income. She argues that any change in income must necessarily be determined by comparing Paul's total 2005 income to his base income of $447,150 as set forth in the 2002 judgment. As Dawn sees it, Paul made more than $447,150 in 2005, so there is nothing more to be said; he should

---

[5] Paul's December 30, 2005 income and expense declaration showed that he received a $113,330 distribution from his former law firm in January 2005 and that he also received a one-time payout of $622,932 from that firm. In his trial testimony, Paul explained that the payout was a return of equity.

continue to pay her the previously ordered amounts, which were based on a minimum income of $447,150 per year.

And if he only makes $205,000? Dawn does not entertain any notion that the parties should learn to live on that amount. Rather, she says she is already living below the marital standard of living and should not have to borrow. Besides, economic downturns and change in employment aside, Dawn assumes Paul will continue to receive a large bonus at year-end. She is unconcerned with his cashflow problems the first 11 months of the year. Rather than founding support obligations on the $205,000 base salary Paul now makes, and ordering a share of any year-end bonus to be paid in support obligations, Dawn expects Paul to continue to make support payments as though he were receiving a current base pay of $447,150, and to return to court at the end of each year to seek relief if no bonus is received.

Given the large income the parties have historically enjoyed, this might seem realistic, at first blush. After all, one might assume that a family with such a high income over the years would have established quite a nice nest egg for Paul to fall back on during the year while waiting to see if a year-end bonus materialized. But the record does not support such an assumption.

The parties appear not to have been good savers. The 2002 judgment reflected that, upon dividing the community assets and liabilities, Dawn received a net estate of $53,815 and Paul received a net estate of $25,334, such that Dawn owed him an equalization payment of $14,241. This state of affairs apparently arose from the parties' ample spending habits. Dawn testified that she believed the parties spent between $32,000 and $35,000 per month in the 12 months preceding their separation. Paul declared that they incurred so much tax and consumer debt when they were married that they had to consolidate about $100,000 in debt into a home equity loan the year before they separated. Dawn herself acknowledged that Paul was in a "dire financial situation, in 2003," inasmuch as he was "[f]aced with large debts owing to the IRS and other creditors" and "was desperate for cash . . . ."

Paul also declared that of the one-time payments he received in 2005, approximately $700,000 was used to pay taxes, including back taxes and debts that were incurred to pay back taxes, and he testified that approximately $200,000 was used to pay Dawn. Paul further testified that the total he paid Dawn in 2005 was almost $400,000. In addition, he declared that he had taken out a home equity loan to pay back taxes, attorney fees and living expenses, and that as of April 2006, he still owed approximately $140,000 on that loan.

Paul provided certain pay stubs showing a regular base pay of $7,855.25 per two-week pay period, with a net pay of $5,153.58 to $5,221.73 for the

respective pay periods. At the same time, his support obligations totaled $10,047 per month. Paul declared that in the first two months of 2006, he paid Dawn more than the amount of his take-home pay and borrowed all of his living expenses. In March, he received the remaining $85,000 of his 2005 bonus from the homebuilder, most of which he used to reduce prior borrowings. He estimated that the remaining amount of his bonus would permit him to go two months before he would have to start borrowing again for living expenses. Paul expected that he would have to borrow 100 percent of his living expenses for the remaining six months of the year. Given the foregoing, Paul met his burden to show a material change in circumstances. (*In re Marriage of Bardzik* (2008) 165 Cal.App.4th 1291, 1303 [83 Cal.Rptr.3d 72] [burden of proof on party seeking modification].)

True enough, Paul's actual income in 2005, while apparently less than it had been for several years at the law firm, was greater than the $447,150 figure contained in the 2002 judgment, which established the original support figures. But to fixate on that one fact in isolation is to put on blinders. No one disagrees that Paul now has a fixed annual salary of $205,000. While no one disagrees that he may be eligible for a whopping bonus of up to 150 percent of that amount, no one disagrees that he may get zero. The bonus is completely discretionary. And, Paul works for a homebuilder. And, the residential housing industry is in the dumps, due to the subprime mortgage crisis and the sluggish economy.

Dawn doesn't care about Paul's predicament. She draws our attention to Family Code section 4058, subdivision (a)(1)[6] which specifically includes bonuses as part of a parent's annual gross income, and to *County of Placer v. Andrade* (1997) 55 Cal.App.4th 1393, 1396 [64 Cal.Rptr.2d 739], which makes note of that fact. We certainly agree that if Paul receives a bonus it must be included in the calculation of his annual gross income for the purposes of section 4058. That does not necessarily mean, however, that he should be deemed to have received a six-figure bonus that may never materialize.

"The assumption underlying [the calculation of a parent's annual gross income] is that past income is a good measure of the future income from which the parent must pay support. However, the law recognizes that is not always the case. Thus, the court is given discretion to adjust . . . 'the monthly net disposable income figure [if it] does not accurately reflect the . . . *prospective* earnings of the parties at the time the determination of support is made . . . .' [Citation.]" (*County of Placer v. Andrade, supra,* 55 Cal.App.4th at p. 1396.) "At issue is whether [Paul's] past earnings accurately reflect his

---

[6] All subsequent statutory references are to the Family Code unless otherwise specifically stated.

prospective earnings." (*Ibid.*) Part and parcel of that "question is whether the bonus[] . . . [is] likely to reoccur." (*Id.* at p. 1397.)

Paul had a high income as a partner at the law firm, but he is no longer a partner at the law firm. As for his in-house employment with the home-builder, the record contains only a one-year income history. During that first year of employment with the homebuilder, he received a six-figure bonus over and above his $205,000 base salary. Is that one year history a good predictor of whether a bonus of that size is likely to reoccur, especially in a precarious real estate market?

■ As we said in *In re Marriage of Riddle* (2005) 125 Cal.App.4th 1075, 1081 [23 Cal.Rptr.3d 273], "this case is essentially a gloss on Family Code sections 4060 and 4064, the two statutes which deal with the problem of calculating fluctuating income for support orders. The aim of section 4060 is to give a trial court discretion to adjust the annual net adjustable income required for a support order when dividing net disposable income by 12 'does not accurately reflect the actual or prospective earnings of the parties.' Section 4064 gives a trial court the authority to adjust a child support order 'as appropriate to accommodate seasonal or fluctuating income of either parent.' While both statutes are framed in discretionary terms, it is also well established that the discretion must be a reasonable one, ' "exercised along legal lines, taking into consideration the circumstances of the parties, their necessities and the financial ability of the [supporting spouse]." ' [Citation.]" (*In re Marriage of Riddle, supra*, 125 Cal.App.4th at p. 1081, fn. omitted.) "The theory is that the court is trying to predict *likely* income for the immediate *future*, as distinct from extraordinarily high or low income in the *past*." (*Id.* at p. 1082.) We must be wary of "the logical fallacy of extrapolation, in which some series of events in the past is necessarily assumed to continue in exactly the same way into the future." (*Id.* at p. 1086.)

"Generally, where a trial court has discretionary power to decide an issue, an appellate court is not authorized to substitute its judgment of the proper decision for that of the trial judge. The trial court's exercise of discretion will not be disturbed on appeal in the absence of a clear showing of abuse, resulting in injury sufficiently grave as to amount to a manifest miscarriage of justice. [Citations.] ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. . . ." ' [Citations.]" (*In re Marriage of Rosevear* (1998) 65 Cal.App.4th 673, 682 [76 Cal.Rptr.2d 691].)

■ In this case, it exceeded the bounds of reason to require Paul to pay nearly 100 percent of his take-home pay in support payments, on the assumption, based on only a one-year history with the homebuilder, that he would continue to receive a six-figure bonus each subsequent year. It placed

him in a position of having to borrow for his living expenses, and thus resulted in a miscarriage of justice.

■ The matter is remanded to the trial court for further consideration. On remand, the trial court, in determining Paul's monthly support obligations, shall found its award on Paul's base salary, exclusive of a speculative bonus. However, any bonus actually received must be counted as part of Paul's annual gross income for the purposes of spousal and child support obligations. Consequently, the court must include in its order a method for requiring Paul to pay support obligations based on any bonus income that he may in fact receive. It may, for example, fashion an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received. (See *In re Marriage of Ostler & Smith* (1990) 223 Cal.App.3d 33 [272 Cal.Rptr. 560].) Such an award would not offend the principles set forth in *In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269 [111 Cal.Rptr.2d 755], for rather than excluding bonus income as a source of child support, it would preserve the rights of the children to participate in their father's wealth. (*Id.* at pp. 285, 289.) Moreover, to fashion a child support order that includes a potential arrearage as "a built-in feature" is not necessarily "fatal." (*Id.* at pp. 296–297.)

The trial court in *In re Marriage of Ostler & Smith, supra,* 223 Cal.App.3d 33, got it right when it stated: " 'No future bonus is guaranteed. It would therefore not be appropriate to base a support order on Husband's bonus income and then require him to file motions to modify at such times as the bonus is reduced. It would be more fair to all parties to base the support order on Husband's income from salary . . . , and to allocate a portion of the future bonus income to the children and to Wife by way of a percentage interest so that future litigation will not be necessary as the bonus income changes.' " (*Id.* at pp. 41–42.) It would be an abuse of discretion for the court to leave Paul near penniless while he awaits the potential of a bonus each year, especially in light of the current plight of homebuilders.

Inasmuch as the evidence shows a change in circumstances with respect to Paul's income that requires a redetermination of support obligations, we need not consider whether a change in circumstances with respect to timeshare alone would have compelled a redetermination of child support. Suffice it to say, on remand, the court shall take the current timeshare into consideration in determining child support.

(3) *Imputation of income*

■ "It is well settled that although a trial court has broad discretion in modifying or revoking an award of spousal support [citation], the court's

discretion is not unlimited. [Citations.] 'To obtain a modification of a previous spousal support order, the moving party must show a material change of circumstances since the time of the prior order.' [Citations.]" (*In re Marriage of Gavron, supra,* 203 Cal.App.3d at p. 710.) "The 'change of circumstances' which can be considered includes all factors affecting need and ability to pay. [Citations.]" (*Ibid.*)

 "We recognize that it is in the best interests of both spouses and of society in general that the supported spouse become self-sufficient. [Section 4320] . . . directs that in determining . . . spousal support, a court is to consider as a factor the supported spouse's marketable skills and ability to engage in gainful employment. As the court observed in *In re Marriage of Morrison* [(1978)] 20 Cal.3d [437,] 451 [143 Cal.Rptr. 139, 573 P.2d 41], 'It certainly may be inferred that by specifically setting forth this factor, the Legislature intended that all supported spouses who were able to do so should seek employment. It also appears the Legislature expected that courts would issue orders encouraging these spouses to seek employment and to work toward becoming self-supporting.' [Citations.]" (*In re Marriage of Gavron, supra,* 203 Cal.App.3d at p. 711.)

Paul complains that Dawn, a licensed attorney, who graduated in the top of her class at Brigham Young University, and commenced her legal career at Latham & Watkins, has done nothing to become self-supporting despite the fact that the 2002 judgment contained a *Gavron* warning to the effect that she must do so. He draws our attention to the following notice, contained in the 2002 judgment: "It is the goal of this state that each party shall make reasonable good faith efforts to become self-supporting as provided for in Family Code section 4320. The failure to make reasonable good faith efforts may be one of the factors considered by the court as a basis for modifying or terminating spousal support." (See § 4320, subd. (*l*).)

Dawn tries to downplay the significance of this language, claiming it was merely informational and not a warning. She further says that it was just a box checked on a Judicial Council form judgment and that she first became aware of it when it was pointed out in Paul's order to show cause. She would seem to argue that a party need not be concerned about the portions of a judgment he or she has not taken the time to read. Surely we cannot countenance that argument.

At the same time, "[i]nherent in the concept that the supported spouse's failure to at least make good-faith efforts to become self-sufficient can constitute a change in circumstances which could warrant a modification in spousal support is the premise that the supported spouse be made aware of the obligation to become self-supporting. It is particularly appropriate here

that there should have been some reasonable advance warning that after an appropriate period of time the supported spouse was expected to become self-sufficient or face onerous legal and financial consequences. There was a lengthy marriage during which the wife was unemployed except at the outset. The wife also . . . devoted herself initially to . . . wifely and parental duties . . . ." (*In re Marriage of Gavron, supra*, 203 Cal.App.3d at p. 712.)

Dawn insists that the 2002 judgment and the 2003 stipulation and order contemplated that she would continue to devote herself to the raising of the five children, not to the development of a career, despite the check-off-the-box "warning" contained in the 2002 judgment. She maintains that, because there was no expectation that she substitute a career for parenting, her failure to become self-supporting cannot "constitute a change in circumstances which could warrant a modification in spousal support." (*In re Marriage of Gavron, supra*, 203 Cal.App.3d at p. 712.)

Dawn misses the point. The change in circumstances here is not her failure to seek employment despite any expectation that she do so. Rather, the change in circumstances is the change in Paul's employment and compensation structure. Paul has done what he could to make the best of a bad situation. Dawn has failed to recognize that the circumstances have indeed changed and the wealth to which the parties had become accustomed is no longer guaranteed. She has failed to do her part to address the changed circumstances.

The court here failed to impute income to Dawn for three reasons—its finding that there was no change in circumstances justifying any change in support obligations, the lack of evidence that it would be in the children's best interests for Dawn to return to work, and the lack of evidence that an attorney position was actually available to Dawn. We have already addressed the first of these points. The court's finding that there was no change in circumstances is not supported by substantial evidence. (See *In re Marriage of Shaughnessy* (2006) 139 Cal.App.4th 1225, 1235 [43 Cal.Rptr.3d 642] [findings to be based on substantial evidence].) We now address the court's remaining points to give the court guidance on remand.

■ We start with the best interests of the children. Where child support is concerned, the trial court in the case before us correctly cited *In re Marriage of Cheriton, supra*, 92 Cal.App.4th 269, for the proposition that "no authority permits a court to impute earning capacity to a parent unless doing so is in the best interest of the children. By explicit statutory direction, the court's determination of earning capacity must be 'consistent with the best interest of the children.' (§ 4058, subd. (b); [citations].)" (*In re Marriage of Cheriton, supra*, 92 Cal.App.4th at p. 301.) As indicated in *Cheriton*, with regard to the

determination of annual gross income for the purposes of child support, section 4058, subdivision (b) provides: "The court may, in its discretion, consider the earning capacity of a parent in lieu of the parent's income, consistent with the best interests of the children." Contrary to Paul's suggestion, we see no error in characterizing this statute as meaning that the best interests of the children must be considered in determining whether to impute income to a parent for the purposes of child support. (*In re Marriage of LaBass & Munsee* (1997) 56 Cal.App.4th 1331, 1340 [66 Cal.Rptr.2d 393].)

■ However, Paul is correct that the *Cheriton* court, in addressing the imputation of income in the context of spousal support, stated: "[A] trial court may consider earning capacity in determining spousal support, just as it may with child support. [Citations.] Unlike a child support order, however, a spousal support award does not require the court to consider the children's best interests. (Cf. § 4058, subd. (b).) Rather, it requires the trial judge to balance a number of different factors, as enumerated in the statute. (§ 4320.)" (*In re Marriage of Cheriton, supra*, 92 Cal.App.4th at p. 308.)

Section 4320 requires that the court, in determining spousal support, "shall" consider certain factors, including "[t]he ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party." (§ 4320, subd. (g).) In other words, even in setting spousal support, the court cannot disregard the impact on the children if the supported parent returns to the workforce. To the extent Paul argues that any impact on the children is utterly irrelevant in the spousal support context, we disagree.

However, we agree with Paul's assertion that, here, the trial court did not consider all of the evidence before it in evaluating the best interests of the children. The court stated there was a "total lack of evidence" that Dawn's returning to work would be in the children's best interests. However, Paul testified that if Dawn contributed to the support of the children, he would not need to spend as much time at work trying to maximize his bonus and would be able to spend more time with the children himself. We cannot disagree with his assertion that it is in the best interests of the children to receive nurturing from both parents. Indeed, sometimes "the 'best interests of the children' are *promoted* when parents [reduce their work hours] so as to be able to spend more time with their children." (*In re Marriage of Bardzik, supra*, 165 Cal.App.4th at p. 1311.)

Also, Dawn complains that the amount Paul currently pays in child and spousal support is insufficient for the children and herself to live according to the marital standard of living. It follows, then, that any additional income Dawn could provide would only increase the level of support available to the children, and thus promote their best interests.

Paul provided a vocational evaluation summary demonstrating that Dawn had a substantial earning capacity. He also provided the testimony of the vocational expert who had prepared the summary, and who had interviewed Dawn as part of the evaluation process. The vocational expert testified that Dawn, as an attorney, had an approximate earning capacity of $95,000 per year to start, although it might take her about 26 weeks to find a position. He also testified that Dawn could earn $16 to $20 per hour as a paralegal.

This testimony notwithstanding, the court concluded that the imputation of income would be improper because it had not been shown that a job was actually available to Dawn. However, as Paul points out, he "bore no burden to convince the court that [Dawn] *would have* secured a . . . job had she applied." (*In re Marriage of LaBass & Munsee, supra*, 56 Cal.App.4th at p. 1339; accord, *In re Marriage of Bardzik, supra*, 165 Cal.App.4th at p. 1306.) Furthermore, it is difficult to disagree with the suggestion that Dawn is likely employable as an entry-level attorney and that substantial salaries are generally available to entry-level attorneys with Dawn's academic standing. It is even more difficult to disagree with the assertion that a licensed attorney with some amount of experience at a law firm the stature of Latham & Watkins would be unable to find employment even as a paralegal.

■ Finally, we agree with Paul's assertion that *In re Marriage of LaBass & Munsee, supra*, 56 Cal.App.4th 1331, offers important guidance in this case. As that case makes clear, " '[e]ach parent should pay for the support of the children *according to his or her ability*,' " inasmuch as "both parents are equally responsible for the support of their children." (*Id.* at pp. 1337, 1340.) Furthermore, "[a] parent does not ' " 'have the right to divest himself [or herself] of his [or her] earning ability at the expense of . . . minor children.' " ' [Citation.] When a parent decides not to seek employment to the best of his or her ability, the court must retain discretion to impute income— otherwise 'one parent by a unilateral decision could eliminate his or her own responsibility to contribute to the support of the child[ren], causing the entire burden of supporting the child[ren] to fall upon the . . . employed parent.' [Citation.]" (*Id.* at p. 1339.)

While the marriage was one of long duration and the parties' original long-term plans were for Dawn to parent the children, Paul has aptly demonstrated a change in circumstances. Furthermore, at the time of the ruling at issue, three of the children had left home and two teenagers remained in Dawn's care. On remand, the trial court shall consider the change in circumstances, Dawn's obligation to provide support for her children, and her ability to do so. It shall also bear in mind the interests of the children, in the manner and to the extent described above, and also their current ages. Finally, the court must also consider the stated goal that supported spouses ultimately become self-supporting. (§ 4320, subd. (*l*).)

### (4) *Miscellaneous matters*

Paul also claims that the court erred in failing to make certain findings he requested. First, he says he requested that the court determine the marital standard of living but it did not do so. However, we observe that the findings portion of the statement of decision notes with respect to the 2002 judgment: "In regards to the marital standard of living, the court found that [Paul] and [Dawn] lived on the income of the only party working: [Paul] at $32,174 monthly ($386,088 annually . . .)." We construe this as a finding regarding the marital standard of living, and therefore consider this particular issue to be resolved.

Second, Paul says the court erred in failing to address his request to modify what he termed "nontraditional" child support. He points to the portion of the reporter's transcript where his attorney remarked, at the beginning of the May 24, 2006 hearing on his order to show cause, that Paul was seeking "with respect again to child and spousal support, [to] modify the order not just in terms of the amount of money, but also in terms of what we are calling non-traditional items. For instance, the insurance, the college fees . . . ." The trial court did not overlook Paul's request. Rather, in its statement of decision, the court said: "On Page 16, line 17, of final written argument, [Paul] continues to request the court to relieve him of 'non traditional' additional support. [Paul] has made no reference as to where such an order exists, and this court has not been able to locate it. Relief is denied without prejudice."

Paul, apparently having failed to cite the trial court to the portion of the record containing the particular order he sought to modify, provides the citation now. He says the order in question is contained on page 3 of the 2003 stipulation and order. That page contains an order requiring him to pay one-half of the expenses necessary for each child to serve a mission for The Church of Jesus Christ of Latter-day Saints and to pay one-half of all undergraduate education expenses. However, the trial court was not required to engage in guesswork. Paul apparently did not provide enough information to the trial court for it to determine the type of relief he sought and we see no error on the court's part. Since the court denied relief without prejudice, Paul, if he chooses to do so, may put his request before the court in a proper motion on remand.

In conclusion, Paul states: "Finally, other requested changes to the existing stipulated judgment should be addressed, in addition to recalculating basic support as requested." Paul gives no hint as to what these "other requested changes" are. " 'When an issue is unsupported by pertinent or cognizable legal argument it may be deemed abandoned and discussion by the reviewing

court is unnecessary.' " (*Estate of Bibb* (2001) 87 Cal.App.4th 461, 470 [104 Cal.Rptr.2d 415].) Paul's final argument is deemed abandoned.

## III

## DISPOSITION

The findings and order after hearing are reversed and remanded for further proceedings consistent with this opinion. Paul shall recover his costs on appeal.

Sills, P. J., and Bedswoth, J., concurred.