176 Cal.App.4th 548 (2009)
M.S., Plaintiff and Respondent,
v.
O.S., Defendant and Appellant.
No. D053996.
Court of Appeals of California, Fourth District, Division One.
August 7, 2009.
*550 Matthew M. Kremer and Stephen Temko for Defendant and Appellant.
M.S., in pro. per., for Plaintiff and Respondent.

*551 OPINION
McCONNELL, P. J. 
In this paternity action, O.S. appeals an order requiring him to pay child support for his young twins. He contends the trial court abused its discretion by including in his income for purposes of guideline support twice-yearly bonuses he received from his Indian tribe, and attorney fees the tribe paid on his behalf. We agree with O.S. on the second issue, and reverse the order and remand the matter for further proceedings. Additionally, for the court's guidance on remand, we hold it may properly include the bonuses in his gross income.

FACTUAL AND PROCEDURAL BACKGROUND
In November 2007 M.S. initiated this action to establish O.S. as the biological father of her unborn twins, and for an order requiring him to pay child support. M.S. gave birth to twins prematurely in January 2008, and genetic testing later confirmed that O.S. is their father.
M.S. submitted an income and expense declaration that claimed no income and $6,200 in monthly expenses. O.S. is a member of the Sycuan Band of the Kumeyaay Nation. He submitted income and expense declarations that stated he was unemployed and had $23,344 in monthly income from the tribe, including $16,400 in regular distributions and $6,944 in bonuses. It also claimed $12,012 in monthly expenses, including $3,092 in court-ordered child support. His 2007 federal income tax form showed the tribe paid him a total of $319,776.21 that year, including $196,800 in regular disbursements; $83,333.32 in bonuses; $4,428 for education and training; $52.64 for tribal life insurance; and $35,162.25 for legal fees. The tribe withheld $110,133.32 in federal income tax and he does not pay state income tax.
In February 2008 the court awarded M.S. $3,978 per month in temporary child support. It also ordered O.S. to pay $3,500 toward M.S.'s attorney fees. The court set the matter for a continued hearing and requested supplemental briefs from the parties.
A hearing was held on July 25, 2008. M.S. submitted an updated income and expense declaration, which claimed no income and $7,365 in monthly expenses. She argued that the entire amount stated on O.S.'s 2007 federal income tax statement should be included in his annual gross income, including the amounts for attorney fees and educational expenses. She stated that in responses to special interrogatories dated June 27, 2008, O.S. admitted the tribe had paid $20,727.24 in legal fees on his behalf thus far in 2008. M.S. also argued that O.S. received a three-bedroom, two-bath home on the *552 reservation free of charge, and the value of that benefit should be considered additional income. She advised the court that O.S. had neither met the twins nor requested visitation.
O.S. advised the court that in 2008 he continued to receive $16,400 per month from the tribe in regular disbursements, which was reduced to $10,000 after taxes, and he had received a bonus in the gross amount of $41,666. O.S. conceded he had free housing on the reservation. He also, however, owned a condominium for which he claimed nearly $4,000 in monthly expenses. His attorney explained that O.S. was not currently renting the condominium because he "initially was afraid that if he rented it, the court would automatically count that as income, even though it ran at a negative number." O.S., however, was "trying to rent it now."
O.S. opposed the inclusion of benefits in his income, such as free housing and the payment of attorney fees. He argued the court should deviate downward from guideline support, because guideline support exceeds the needs of the six-month-old twins, and it actually supports M.S. and her mother, who lived with M.S. rent free. He also argued the court should impute at least minimum wage income to M.S. He challenged the validity of M.S.'s claimed expenses.
The court took the matter under submission, and it announced its ruling at a hearing on August 26. The court imputed no income to M.S. noting she was a teenager with no high school education who had recently given birth prematurely to twins. The court did order her to apply for benefits from her own Indian tribe, and to notify O.S.'s counsel of her efforts.
The court also imputed no income to O.S. "at this time." The court determined he had deductible mortgage interest of $3,400 per month and property taxes of $357 per month, and court-ordered child support of $3,092 per month. The court included in O.S.'s income the bonuses he received from the tribe, and explained that although they were distributed in June and November they "should be calculated on an annualized basis, resulting in a monetary amount of $6,944 per month." The court also included in O.S.'s income the $35,162 the tribe paid for attorney fees he personally incurred in 2007, noting the tribe reported this income to the Internal Revenue Service as taxable income to O.S. The court did not include the value of O.S.'s free housing on the reservation, educational expenses the tribe covered or free trips. The court found O.S. shared no time with the children.
Additionally, the court determined O.S. did not meet his burden of rebutting the presumption of guideline child support. The court explained that "[w]hile certain expenses identified in petitioner's income and expense *553 declaration do not appear credible, that and other factors presented are not sufficient to rebut the presumption." It ordered him to pay $4,370 per month in support retroactive to January 1, 2008.

DISCUSSION

I

Bonuses

A
O.S. contends the court improperly included his "speculative bonus income in his gross annual income for purposes of calculating child support."[1] We disagree.
"A child support order is reviewed for an abuse of discretion. [Citations.] We determine `whether the court's factual determinations are supported by substantial evidence and whether the court acted reasonably in exercising its discretion.' [Citation.] We do not substitute our own judgment for that of the trial court, but determine only if any judge reasonably could have made such an order." (In re Marriage of Schlafly (2007) 149 Cal.App.4th 747, 753 [57 Cal.Rptr.3d 274].)
(1) Because of California's strong public policy in favor of adequate child support, "courts are required to calculate child support under the statutory guidelines. [Citations.] `[A]dherence to the guidelines is mandatory, and the trial court may not depart from them except in the special circumstances enumerated in the statutes. [Citations.]' [Citation.] The guideline amount of child support, which is calculated by applying a mathematical formula to the parents' incomes, is presumptively correct." (In re Marriage of Williams (2007) 150 Cal.App.4th 1221, 1237 [58 Cal.Rptr.3d 877].)
"The mandatory formula for calculating child support takes into account both parents' `net monthly disposable income' [citation], which is determined based upon the parents' `annual gross income' ...." (In re Marriage of Alter (2009) 171 Cal.App.4th 718, 731 [89 Cal.Rptr.3d 849] (Alter).) "[I]ncome is broadly defined for purposes of child support. [Citations.] Subject to certain statutory exceptions, which do not apply here, [annual] gross income `means income from whatever source derived ....' ([Fam. Code,[2]] § 4058, subd. (a).) Although it specifically lists more than a dozen possible income *554 sources, by the statute's express terms, that list is not exhaustive. [Citations.] Rather, the codified income items `are by way of illustration only. Income from other sources ... should properly be factored into the "annual gross income" computation. [Citations.]'" (In re Marriage of Cheriton (2001) 92 Cal.App.4th 269, 285 [111 Cal.Rptr.2d 755].) "The judicially recognized sources of income cover a wide gamut." (Ibid.)
(2) O.S. ignores that section 4058, subdivision (a)(1) expressly includes bonuses as part of a parent's annual gross income. He also ignores County of Placer v. Andrade (1997) 55 Cal.App.4th 1393 [64 Cal.Rptr.2d 739], which explains the "court cannot deduct predictable ... bonuses in determining [a parent's] prospective earnings merely because they occur sporadically. The mechanism for calculating [a parent's] net disposable income is a monthly average. (§ 4060.)[3] The question is whether the bonuses ... are likely to reoccur. Absent a determination that `the monthly net disposable income figure does not accurately reflect [the parent's] ... prospective earnings,' it [would be] error for the court to exclude ... bonuses in its calculation. [¶] The court can disregard past bonus ... payments from the calculation only if it determines that [the parent] is unlikely to receive them in the future." (County of Placer v. Andrade, supra, at pp. 1396-1397.) Bonuses are included in income because "past income is a good measure of the future income from which the parent must pay support." (Id. at p. 1396; see also Seymour v. Hunter (Iowa 1999) 603 N.W.2d 625, 626 [court rejected Indian tribe member's argument per capita payments from tribe were not income subject to child support because they were "unguaranteed, speculative, and left totally to the whim of the tribal council," explaining "[t]o ignore recent experience would be to invite manipulation of the guidelines by arrangements with friendly employers, earmarking part of the expected earnings by labeling them as bonuses"].)
"The employee parent has the burden of demonstrating past bonus ... income is not likely to be continued. Courts are very skeptical of such claims made by the employee party alone. Counsel should therefore obtain declarations from the employer (to the effect ... bonus pay will be curtailed and why) ..." (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2009) ¶ 6:249.1, p. 6-109 (rev. # 1, 2009).)
The only evidence O.S. cites is his own declaration, which states: "I received a bonus from the Sycuan Tribal Government in the total amount of *555 $83,333 for the year 2007. However, I may or may not receive a bonus every year." He did not submit anything from the tribe supporting the notion he may not receive bonuses in the future. Further, he advised the court in July 2008, before it made the child support award, that he had already received one bonus in 2008, and it was one-half of the total bonuses he received in 2007. We find no abuse of discretion as O.S. did not meet his burden of proof, and to the contrary his evidence indicates it is likely the bonuses will continue on schedule.
As discussed below, we find abuse of discretion on another issue and reverse the order with directions. On remand, however, the court may include the bonuses in O.S.'s gross income under section 4058, subdivision (a).

B
O.S.'s reliance on In re Marriage of Mosley (2008) 165 Cal.App.4th 1375 [82 Cal.Rptr.3d 497] (Mosley), is misplaced. In Mosley, the father (Paul), a real estate attorney, lost his lucrative job because of the downturn in the market. He took a job in February 2005 as in-house counsel with a homebuilder that paid a base salary of $205,000, a fraction of his former base salary, with the possibility of a yearend bonus of up to 150 percent of his base salary dependent on both his performance and the success of the housing industry. (Id. at pp. 1381-1382.) The evidence showed Paul was awarded a bonus in 2005, "that $257,000 was paid in December 2005 as 75 percent of the bonus awarded, and that $85,000 was paid in March 2006 as the remaining 25 percent." (Id. at pp. 1382-1383.)
In January 2006 Paul moved for modification of his spousal and child support obligations. He explained that from his base salary he had net take-home pay of $10,000 to $11,000 per month, and after making monthly support payments of $10,047, he had less than $1,000 for his own monthly expenses. (Mosley, supra, 165 Cal.App.4th at p. 1381.) The trial court found no change of circumstances, because Paul's total 2005 income of $448,392 exceeded his income in 2002 when judgment was entered. (Id. at p. 1383.)
The Court of Appeal reversed the order. The court explained the evidence showed that during the marriage the parties were "ample spend[ers]," and thus Paul had no nest egg to rely on in making support payments for an entire year before receiving any bonus. (Mosley, supra, 165 Cal.App.4th at p. 1384.) After paying support, he had to borrow money to meet his living expenses, and he "expected that he would have to borrow 100 percent of his living expenses for the remaining six months of the year." (Id. at p. 1385.) The court noted that while he may "be eligible for a whopping bonus of up to 150 percent of [his base pay], no one disagrees that he may get zero. The bonus is *556 completely discretionary. And, Paul works for a homebuilder. And, the residential housing industry is in the dumps, due to the subprime mortgage crisis and the sluggish economy." (Id. at p. 1385.) The court held "it exceeded the bounds of reason to require Paul to pay nearly 100 percent of his take-home pay in support payments, on the assumption, based on only a one-year history with the homebuilder, that he would continue to receive a six-figure bonus each subsequent year. It placed him in a position of having to borrow for his living expenses, and thus resulted in a miscarriage of justice." (Id. at pp. 1386-1387.) The court added that "[i]t would be an abuse of discretion for the court to leave Paul near penniless while he awaits the potential of a bonus each year, especially in light of the current plight of homebuilders." (Id. at p. 1387.)
The court remanded the matter to the trial court, and directed it to base its support award on Paul's "base salary, exclusive of a speculative bonus." (Mosley, supra, 165 Cal.App.4th at p. 1387.) The court explained, however, that "any bonus actually received must be counted as part of Paul's annual gross income for the purposes of spousal and child support obligations. Consequently, the court must include in its order a method for requiring Paul to pay support obligations based on any bonus income that he may in fact receive. It may, for example, fashion an additional award, over and above guideline support, expressed as a fraction or percentage of any discretionary bonus actually received." (Ibid.)
(3) The facts of Mosley are readily distinguishable. "It is a foundational principle that: `"[T]he language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts."'" (Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1157 [278 Cal.Rptr. 614, 805 P.2d 873].) Here, O.S. is unemployed and he receives his entire income from the Sycuan tribe. He produced no evidence from the tribe or otherwise that there is any plight in the Indian gaming industry that may affect future bonuses, either in frequency or amount. Indeed, the evidence shows that in June 2008 O.S. received a bonus that was one-half the amount of total bonuses he received in 2007.
Additionally, since the tribe distributes bonuses twice a year, O.S. is not required to advance the portion of support payments based on the bonuses for an entire year as was the case in Mosley. He submitted a declaration before the July 2008 hearing that states, "After payment of support, I do not have significant funds to pay for my own living expenses. I am often late on bills because I do not have the money to pay them. I receive a bonus twice per year, but the monthly child support order includes the bonus amount. This creates a financial strain on me, since child support is calculated on an *557 income I do not receive monthly." At the hearing, however, O.S. conceded he had not been renting his condominium, but he was then trying to do so. There is no actual evidence he cannot budget his twice-yearly bonus payments in a manner to cover his monthly child support obligations.
Under all the circumstances, we find no abuse of discretion. It appears likely the bonuses will continue, but if they do not, O.S. can petition for modification of the child support order.

II

Attorney Fees
We are, however, persuaded by O.S.'s contention the court abused its discretion by including the tribe's payment of his attorney fees in his gross annual income under section 4058, subdivision (a) for purposes of the guideline support calculation. We agree with O.S. that because the payments go directly to his attorneys, and are not part of his income or cashflow available for child support, the attorney fees benefit may be considered only under section 4057 as a circumstance potentially warranting an upward departure from the guideline amount.[4]
It is undisputed that for 2007 the tribe included on O.S.'s federal income tax statement $35,162 it paid on his behalf for attorney fees. (See 25 U.S.C. § 2710(b)(3)(D) ["[n]et revenues from any class II gaming activities conducted or licensed by any Indian tribe may be used to make per capita payments to members of the Indian tribe only if" the "per capita payments are subject to Federal taxation and tribes notify members of such tax liability when payments are made"].) M.S. claims this justifies the inclusion of that amount in O.S.'s gross income under section 4058, subdivision (a).
(4) A parent's gross income, as stated under penalty of perjury on recent tax returns, is considered presumptively correct for purposes of child support. "Returns are, after all, ultimately enforced by federal and state criminal penalties. Hence it is not surprising that tax returns are the core component of determinations under the guideline formula." (In re Marriage of Loh (2001) 93 Cal.App.4th 325, 332 [112 Cal.Rptr.2d 893] (Loh).) "Although federal law is not conclusive on the interpretation of section 4058, it is persuasive, because `[t]he operative language in subdivision (a) [of section 4058], i.e., "annual *558 gross income ... means income from whatever source derived," was lifted straight from the definition of income in section 61 of the Internal Revenue Code.'" (In re Marriage of Scheppers (2001) 86 Cal.App.4th 646, 650 [103 Cal.Rptr.2d 529] (Scheppers).)
Ordinarily, a party's challenge to the presumption of correctness is based on the argument that income or benefits not included on the other parent's federal tax returns should nonetheless be included in gross income for calculation of guideline support. For instance, in Scheppers, supra, 86 Cal.App.4th at page 649, the court rejected the father's argument that a lump-sum life insurance benefit was within the scope of the mother's gross income. The court explained life insurance benefits are not income under the federal Internal Revenue Code and the inclusion of such benefits in income would be impractical. As to the last point, the court pondered: "If the mother were deemed to have received $200,000 in income in the year in which the insurance proceeds were paid, what would happen the following year when her income would be $200,000 less? Would she be entitled to immediately move for an increase in child support? And if so, what is the sense in treating the insurance proceeds as income in the first place?" (Id. at p. 650.)
In Stewart v. Gomez (1996) 47 Cal.App.4th 1748 [55 Cal.Rptr.2d 531] (Stewart), the Court of Appeal held the trial court properly exercised its discretion by including the fair market value of rent-free housing on an Indian reservation in the disabled father's gross income under section 4058. The court explained, "subdivision (a) of section 4058 defines `gross income' as `includ[ing], but... not limited to' (italics added) the listed items. `The statutory definition of a term as "including" listed items does not necessarily limit the original term to the listed inclusions.'" (Stewart, supra, at p. 1754.) The court also relied on subdivision (a)(3) of section 4058, which "gives the court discretion to consider as income: `employee benefits or self-employment benefits, taking into consideration the benefit to the employee, any corresponding reduction in living expenses, and other relevant facts.'" (Id. at p. 1755, italics added in Stewart.) The court found "no reason to distinguish an employee housing benefit from an Indian reservation housing benefit," since both types of benefits reduced living expenses and increased the amount of money available for child support. (Ibid.; see also County of Kern v. Castle (1999) 75 Cal.App.4th 1442, 1451 [89 Cal.Rptr.2d 874] (Castle) [the father had paid off his mortgage with inheritance money; following Stewart the court held the mortgage-free housing could be included in his gross income under subd. (a)(3) of § 4058 on theory it reduced his living expenses].)
In Loh, however, the court rejected a blanket rule, suggested by Stewart and Castle, that any payment reducing a parent's living expenses is income *559 under section 4058, subdivision (a). (Loh, supra, 93 Cal.App.4th at p. 334.) The court concluded "such an approach creates serious anomalies when one realizes that the most common instances of `things that reduce living expense' are new mate or nonmarital partner income, items which the Legislature has specifically forbidden, in section 4057.5, to be taken into account in `determining or modifying' child support." (Loh, supra, at p. 334.) The Loh court also noted that in Stewart, the inclusion of the value of free housing, "based on an it-reduces-living-expenses theory[,] [e]ffectively ... meant that the support order was based on money that the disabled carpenter did not have." (Loh, supra, at p. 334, italics added.)
The Loh court also criticized Stewart for cursorily relying on subdivision (a)(3) of section 4058 as authority for including free housing as income. (Loh, supra, 93 Cal.App.4th at p. 335.) The court reasoned that "[h]aving expressly mentioned [in subdivision (a)(3) of section 4058] the `corresponding reduction in living expense' idea only in the context of employee or self-employment benefits, the natural inference is that the Legislature didn't want trial courts bogged down in benefit debates outside of that context." (Ibid., fn. omitted.)
The Loh court further elaborated that if "in Stewart or Castle, the housing situation of one parent might have meant that application of the formula amount would have been inappropriate or unjust (and there is no question, given the facts in Castle, that it was), the proper course was to first calculate the guideline amount in light of the parents' incomes as revealed by such evidence as tax returns, income and expense declarations and pay stubs, and then, under section 4057, to adjust the amount upward in light of the free housing benefit. Such an approach respects the rebuttable correctness of the mechanically calculated guideline amount, and allows child support awards to properly reflect the parents' standard of living without doing violence to the word `income' in a way that would make the Sheriff of Nottingham proud." (Loh, supra, 93 Cal.App.4th at pp. 335-336, fn. omitted; see also In re Marriage of Schlafly, supra, 149 Cal.App.4th at p. 758 [following Loh approach as to parent's free housing].)[5]
*560 In Alter, supra, 171 Cal.App.4th 718, a gift income case, the court distinguished Loh on the ground it pertains to noncash benefits. The court explained that "[w]ith noncash benefits, the court must make ad hoc determinations of the value, which are more complicated to do and could lead to inconsistent results. These concerns are not present with gifts of cash. Cash gifts are readily valued." (Alter, supra, at p. 734.) The court noted that while gifts are not included in federal income tax, the presumptive correctness of tax returns may, at the court's discretion, be rebutted by evidence of recurring gifts of cash that are a regular part of a parent's income. (Id. at pp. 734-735, 737.) The court determined the trial court reasonably included in the father's income $3,000 per month in cash that his mother gave him to pay his rent. (Id. at p. 737.) The court noted, "Jack's mother did not simply give him the benefit of living in the home; she gave him the money to pay for it. Thus, the benefit was easily valued and represented part of Jack's monthly cash flow." (Ibid.)
(5) Here, the tribe's payment of O.S.'s attorney fees is easily valued because the amount the tribe paid is stated on his federal income tax statement. It is undisputed, however, that the tribe pays his attorneys directly, and if he incurs no fees he gets no benefit. Accordingly, unlike the situation in Alter, the payments are not part of O.S.'s regular income or included in his cashflow. This case is akin to Stewart, in which the inclusion of a benefit resulted in a presumptively correct guideline amount based in part on money the father simply does not have available for support. Indeed, the tribe's attorney fees benefit for 2007 was $35,162.25, and thus he was attributed with nearly $3,000 per month in extra income. It is not unusual for legal bills in family law matters to be much higher, and if a tribe were to pay a substantially higher amount in fees on behalf of a tribe member, say $100,000 or more, the infirmity of the court's approach would be even more glaringly apparent.
(6) O.S. urges us to adopt the Loh approach, but it is not entirely on point. In Loh, the issue was whether nontaxable income should be included in gross income under section 4058, subdivision (a), and the issue here is whether taxable income should be excluded. To achieve a similar proper and just result, we adopt a hybrid Loh approach. We conclude O.S. has rebutted the presumption his income is as stated in his 2007 federal income tax statement, to the extent it includes the attorney fees benefit, and thus the benefit may not be included in the guideline amount. Federal tax law is not conclusive, and the "Internal Revenue Code does not so much define the term `income' as identify that which, consistent with prevailing federal tax policy, might be taxed." (Alter, supra, 171 Cal.App.4th at p. 735.) Further, "[a]lthough the language of section 4058 is expansive, it is not limitless." (In re Marriage of Henry (2005) 126 Cal.App.4th 111, 119 [23 Cal.Rptr.3d 707].) Notably, every type of income specified in subdivision (a)(1) and (2) of section *561 4058 is money the supporting parent actually receives. O.S. agrees that on remand, the court may consider under section 4057 whatever impact his attorney fees have on his living expenses and resources.[6]

DISPOSITION
The order is reversed, and the matter is remanded to the trial court for further proceedings in accordance with this opinion. M.S. is entitled to costs on appeal.
O'Rourke, J., and Aaron, J., concurred.
NOTES
[1] In her respondent's brief M.S. does not address this issue.
[2] All statutory references are to the Family Code.
[3] Section 4060 provides: "The monthly net disposable income shall be computed by dividing the annual net disposable income by 12. If the monthly net disposable income figure does not accurately reflect the actual or prospective earnings of the parties at the time the determination of support is made, the court may adjust the amount appropriately." Section 4064 provides: "The court may adjust the child support order as appropriate to accommodate seasonal or fluctuating income of either parent."
[4] Section 4057 provides that the presumptive correctness of guideline support "may be rebutted by admissible evidence showing that application of the formula would be unjust or inappropriate in the particular case" because of various factors, including that guideline support "would be unjust or inappropriate due to special circumstances." (§ 4057, subd. (b)(5).)
[5] In Loh, the mother, a successful insurance agent, sought an upward modification of a child support order against the father, a recently unemployed stockbroker, not based on his tax returns but based on "`lifestyle' evidence based on a series of photos showing her ex-spouse at the home of his girlfriend and in or by a series of cars." (Loh, supra, 93 Cal.App.4th at p. 327.) The trial court found the father had "nontaxable" income of $9,000, "a figure which appears to have been plucked from thin air." (Ibid.) The Court of Appeal reversed the order, concluding "[e]vidence of lifestyle, particularly a lifestyle subsidized by a new `nonmarital partner' [citation], is not a cheap substitute for proper discovery of income reported on tax returns." (Ibid.) The court noted the mother did not attempt to show the father's income was other than stated on his tax return. (Id. at p. 336.)
[6] We note there is evidence in the record that the attorney fees benefit is recurrent. In July 2007 the tribe paid $35,162 in fees on O.S.'s behalf, and by July 2008 when the hearing was held the tribe had already paid an additional $20,727.24 in fees. In 2008 he had three pending matters, two paternity matters and a criminal matter, and this case, if not the others, has continued into 2009.