Filed 11/26/13  Marriage of Vidales CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ARTURO VIDALES and PAULA VIDALES. | |
| ARTURO VIDALES,<br><br>　　　Plaintiff and Appellant,<br><br>　　　　　v.<br><br>PAULA VIDALES,<br><br>　　　Defendant and Respondent. | F064783<br><br>(Super. Ct. No. 04CEFL00512)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kimberly Nystrom-Geist, Judge.

Rusca & Rusca Law and Christopher M. Rusca for Plaintiff and Appellant.

David Minyard for Defendant and Respondent.

-ooOoo-

In this marital dissolution case, respondent Paula Yanez (formerly Paula Vidales) (Paula) was granted sole physical custody of the parties' two minor children, and appellant Arturo Vidales (Arturo) was required to pay child support. Later, when Arturo was in substantial arrears on his child support obligations, he filed a petition in the trial court seeking to modify the existing child support order. When a hearing on that matter was held, the trial court denied the relief sought by Arturo but reserved the issue of whether to grant Paula's request for an award of need-based attorney fees pursuant to Family Code section 2030.[1] At a continued hearing to address the attorney fees issue, the trial court awarded Paula $15,000 in attorney fees. Arturo appeals from the order granting attorney fees, contending that the trial court abused its discretion. We modify the challenged order by reducing the amount of the award to what was actually requested by Paula in her motion ($7,500), but in other respects we conclude that no abuse of discretion has been shown. As so modified, we affirm the order of the trial court.

## FACTS AND PROCEDURAL HISTORY

As to background circumstances and proceedings in this case occurring *prior to the subject attorney fees motion*, our knowledge is hampered by the minimal record provided to us. As to that part of the procedural history, the record on appeal merely consists of docket entries in the superior court's register of actions and the factual summaries provided by the parties in their appellate briefs. With that caveat in mind, we attempt to provide a brief summary of the relevant circumstances that preceded the attorney fees motion. Then we shall describe the motion itself and the trial court's ruling thereon.

Arturo and Paula were married with two minor children when Arturo filed a petition for dissolution of the marriage on January 28, 2004. A status-only judgment of dissolution of the marriage was filed on January 3, 2007. On November 28, 2007, Arturo

---

[1] All further statutory references are to the Family Code unless otherwise noted.

was ordered to pay child support for the parties' two children. The trial court indicated that the Fresno County Department of Child Support Services (DCSS) would enforce the child support obligation. DCSS sought to collect child support from Arturo by means of Wage Assignment Orders.

On June 9, 2009, Arturo filed a motion seeking to modify the child custody and child visitation arrangement. On February 15, 2010, the trial court ordered joint legal custody of the children, with Paula to have sole physical custody and Arturo to have supervised visitation subject to regular drug screening. Presumably, this was (or became) the existing, permanent order concerning child custody. Subsequent issues arose in 2010 and 2011 concerning the terms of visitation, drug testing, and other details, but such issues were apparently resolved by the parties or through court-ordered mediation services, with the trial court adopting certain recommendations of the mediator.

Arturo's Motion to Modify Child Support

On May 26, 2009, Arturo filed a motion to modify child support. We do not have the moving or opposing papers relating to this motion, but one of the issues apparently raised by Arturo was his alleged inability to find work and/or alleged disability. After numerous appearances and continuances relating to this motion, the hearing on the merits did not commence until October 4, 2011, nearly two and one-half years after Arturo first filed the motion. Arturo concedes that "[f]rom May 26, 2009, to October 4, 2011, the matter was continued sixteen (16) times." It appears from the docket entries that the continuances were sometimes initiated by Arturo, and other times by Paula, by stipulation, the trial court and/or DCSS. On the record before us, it is impossible to ascertain whether or not the majority of the continuances were due to circumstances that were predominantly the fault of any one party.[2]

---

[2] The record on appeal does not include the motion to modify child support, nor any of the supporting or opposing papers and declarations relating to the child support issue, nor the numerous minute orders from the several occasions on which the hearing was

3.

On June 29, 2011, the trial court found that certain requests for relief by Arturo were completely without merit and he was ordered to pay $2,499 in attorney fees to Paula. Arturo claims the $2,499 in attorney fees was ordered in connection with a distinct property-related motion that he had filed; Paula claims the attorney fees arose out of one of Arturo's unsubstantiated requests to modify child support. The record provided on appeal is unclear.

Hearings on the Motion to Modify Child Support

A hearing or trial was finally held on Arturo's motion to modify child support on October 4, 6, and November 1, 2011. Both Arturo and Paula testified. The presentation of evidence was completed on October 6, 2011, with closing arguments postponed until November 1, 2011. Paula's attorney (David Minyard) requested that an award of need-based attorney fees be made to Paula and, on October 7, 2011, Mr. Minyard filed his declaration in support of that request. On November 1, 2011, the attorneys completed their closing arguments, after which the trial court stated its actual or intended decision. According to a \minute order from the November 29, 2011, hearing, the trial court denied as unreasonable Arturo's motion to modify child support. Before the conclusion of the November 1, 2011, hearing, the trial court noted that there was no motion for sanctions pending, but there were oral motions for attorney fees "by both sides." Accordingly, each party was ordered to provide an updated "Income and Expense Declaration, as well as an Attorney's Fees Declaration by 11/18/2011 and file with the Court by 11/21/2011." Further, both sides were ordered "to return on 11/29/2011 … regarding the issue of attorney's fees."

---

continued, nor any of the prior income and expense declarations of the parties in connection with the hearings, nor the transcripts of the trial/hearing dates that occurred on October 4, 6, and November 1, 2011, regarding the merits of the motion to modify child support.

<u>The Continued Hearing to Address Attorney Fees</u>

By the time of the continued hearing regarding attorney fees, the trial court had received several documents from the parties relating to their attorney fees requests. We briefly note what these documents were and what they said.

On Paula's behalf, Mr. Minyard previously filed (on October 7, 2011) a declaration in support of Paula's request for attorney fees. Minyard's declaration stated that from May 2009 to October 4, 2011, Paula had incurred attorney fees and costs totaling $12,169.75. A copy of Minyard's attorney billing records was attached to the declaration. The declaration further stated: "On June 29, [2011], this court ordered [Arturo] to pay [Paula] attorney fees in the amount of $2,499.00 forthwith. [Arturo] has failed to pay the attorney fees as ordered by this court. [¶] [Arturo] nor his attorneys have ever provided any documentation to support [Arturo's] alleged disability claim. [Arturo] was previously represented by Attorney Robert Cervantes and has now hired new counsel to represent him in this matter. [Arturo] also retained the services of Attorney Jean Pinkerton in January of 2010 to prepare a Qualified Domestic Relations Order. [¶] [Arturo] currently owes child support arrears in excess of $70,000." Based upon these asserted facts, Paula's motion requested "*attorney fees in the amount of $7500.*" (Italics added.)

On November 15, 2011, Paula filed her income and expense declaration. Paula reported therein that her prior employment ended in June 2010, and since that time she had received unemployment compensation in the amount of $1,308 per month, but it was uncertain whether those sums would continue. She stated that her expenses each month totaled $1,735. Regarding attorney fees, her declaration stated that she previously paid her attorney $8,400 in attorney fees and costs, which she paid from "personal/savings and employment," and she still owed her attorney the sum of $11,900 in attorney fees and costs. Under the child support information heading, her declaration asserted that the

parties' two minor children spent 98 percent of their time with her and 2 percent of their time with their father.

Arturo also filed an income and expense declaration prior to the hearing. He stated in that document that he had been unemployed since July 2007, and was receiving $1,096.33 each month from an insurance company hardship settlement fund, but he anticipated those payments would not be continuing. Arturo's declaration disclosed that his new wife's gross income each month was $7,666.67, and he admitted that she was paying most of his monthly household expenses. Specifically, Arturo's total monthly expenses were $5,340.73, of which his new wife paid $4,250. His declaration listed monthly expenses that included credit card bills from Nordstrom, Sears, Kohls, Macy's, along with monies due each month on his two bank credit cards. On the issue of attorney fees, Arturo's declaration stated he had paid his current attorney to date a total of $1,610, using funds his sister loaned him, and he still owed his attorney the sum of $3,276.50. Arturo also provided a copy of the joint income tax return for 2010, which he filed with his new wife, reflecting a combined annual income of $86,845.

The hearing on the issue of attorney fees was held on November 29, 2011. At the outset of the hearing, Arturo's attorney (Christopher Rusca) immediately withdrew his client's attorney fees request, leaving only Paula's motion for attorney fees. The trial court then questioned Arturo and Mr. Rusca at length to ascertain how much Arturo paid his prior attorney, Robert Cervantes, in the ongoing litigation of the child support issue. Arturo told the trial court it was only $2,500, and he denied there was anything further he owed to Mr. Cervantes. Mr. Rusca attempted to qualify Arturo's remarks by reporting a conversation Mr. Rusca recently had with Mr. Cervantes, but Mr. Rusca was unable to provide any dollar amount of Arturo's past attorney fees. At that point in the oral argument, Mr. Minyard, reminded the trial court that it had previously directed Arturo to complete an accurate statement of how much attorney fees he had paid to Mr. Cervantes. Mr. Minyard argued that, in light of the many court appearances on the child support

issue, Arturo's claim to have paid such a small amount in attorney fees was simply not credible.[3] Further, Mr. Minyard observed this was the first time that "we have actually received an appropriate income and expense declaration finally laying out the entire amount of [Arturo's] expenses," and he argued that Arturo "has not been forthcoming" in reporting his income to the court.

During the hearing, Mr. Rusca took issue with the trial court's announcement at the beginning of oral argument that if it awarded attorney fees, it would be in the amount of approximately $15,000, based on a particular methodology. Mr. Rusca objected because the methodology employed by the trial court was not disclosed in advance and no adequate accounting or showing had been offered to support it. Moreover, as we noted above, Paula had only requested $7,500 in attorney fees.

After oral argument was completed, the trial court granted Paula's motion for attorney fees in the amount of $15,000. The trial court provided a lengthy oral explanation of its ruling from the bench and, afterwards, a formal written order was prepared that incorporated a transcript of the trial court's oral explanation. Specifically, the trial court's written order from the November 29, 2011, hearing stated as follows:

> "In this case there is a dramatic difference in how the parties live. [Arturo's] income and expense declaration indicates that his household expenses are $5,340, that $4,250 of these expenses were paid by someone else. He has debts to Nordstrom, Kohls, Macys, other credit card debt. All of his payments are current. The information regarding attorney's fees is clearly inadequate. [Arturo] manages to live in a home where the mortgage is $1700 per month.
>
> "The court does not consider [Arturo's] wife's income as being available for attorney's fees. The court considered these expenses, which are marked as estimated expenses, to be the most revealing of any income

---

[3]    Mr. Minyard noted that as recently as May 2011, in connection with a motion on property issues, Mr. Cervantes filed a declaration requesting attorney fees of $5,415 "just for that motion."

and expense declaration previously filed by [Arturo]. [Arturo] indicates that he has $13 in cash, checking accounts. And regarding stocks, bonds and other assets that could easily sell, he wrote DCSS lien.

"[Paula], on the other hand, barely survives. Her household income is $1730, her household expenses are $1735. She has no current income, minimal debt. And she has custody of the parties' children. The father's time share is essentially zero. He sees them under supervised conditions.

"All of the litigation regarding child support is attributable to [Arturo]. [Arturo] chose when to seek the modification. He had, as the Court previously noted, an extensive period of time in which to prove his case and yet he failed to do so. There were close to countless appearances for [Paula] and her attorney. [Paula's] interests in this litigation, and more importantly the children's interest in this litigation could not have been adequately presented to the Court but for the effort of [Paula's] counsel. She could not possibly have done this on her own.

"The attorney's fees are reasonable under the circumstances. They are not reasonable for a request to modify child support. So what should have happened is that [Arturo] filed a well-founded motion with proper supporting documentation; that the parties went to court once or perhaps twice, the matter was resolved and everyone moved on. But the circumstances were created by [Arturo]. He filed papers that did not include adequate facts. He failed to produce documents when required to do so. He failed to comply with [the] Court's orders. He has failed to comply with the child support order. And as noted in the Court's prior order, DCSS reported that [Arturo] owes in excess of $62,000 in child support. He failed to comply with a prior court order pertaining to attorney's fees.

"The Court does not find some bad intent on [Arturo's] part. This is not in the nature of a sanction. The Court has considered the conduct and is not ordering sanctions. But [Arturo] has driven this litigation, always able to afford his own attorney, always being able to live a comfortable life style while his children go without. It is appropriate for [Arturo] to bear all of the attorney's fees associated with this motion. The Court still does not know what [Arturo's] income was. [Arturo] has filed income and expense declarations varying from 'I receive zero' to [']I receive some other amount.' Now indicating that he is receiving this hardship money, which is fairly consistent with his testimony at trial.

"**The Court is going to order the amount of $15,000 in attorney's fees payable directly to Mr. Minyard's office, and to [Paula] jointly.**

**This would be enforceable as any money judgment would be enforceable in any manner available under the law.** And while the Court said the attorney's fee[s] were not reasonable in general, that is because of the way this particular litigation was handled. The attorney's fees were entirely reasonable on [Paula's] part and on her attorney's part in light of the circumstances … which they faced. To do anything other than this would be to reward [Arturo] for continuing to litigate when he owes in excess of $62,000 in child support. And that would be unforgivable.

"The Court is using the fact that [Arturo] has proven himself to lack credibility on many issues. [Arturo] has failed to provide the Court with adequate information about his expenses. He has failed to comply with the Court's order that he specifically provide information about his payment of his own attorney's fees and the source for those payments, [and Arturo] has not provided the Court with adequate information at any turn regarding this litigation. The best information the Court has available is the information used to calculate the prior support order. It appears to the Court, that [Arturo] has access to funds [that] he has not divulged to the Court. He has had the ability to litigate this matter. He has driven this litigation at every turn, thus revealing that he has the ability to have private counsel at every moment at his own expense wherever he finds those funds from.

"The Court finds [Arturo] lacks credibility, as he previously filed knowingly incorrect income and expense declarations where he advanced to the Court that his income was zero, when, in fact, he was receiving funds [from] the insurance company that he has not revealed.

"The Court is not imputing any income to [Arturo]. He has not been forthright with the Court, so it's very difficult for the Court to provide imputed income."

As the above order made clear, the trial court found that Arturo lacked any credibility and had not been forthcoming in reporting his income, but had failed to comply with prior orders in that regard. The trial court clearly considered the entire history of the past appearances, court filings and proceedings connected with Arturo's motion to modify child support. The trial court concluded that Arturo had other sources of income sufficient to carry on the litigation and it was appropriate to order him to pay Paula's attorney fees. That conclusion was based on all of the circumstances referred to in the trial court's order, including (i) Arturo's ability to continually hire attorneys and

9.

drive the litigation through countless hearings and appearances, (ii) his expenses reflected that he maintained a comfortable lifestyle even though his child support is in arrears in the amount of $62,000, and (iii) he had filed inaccurate income declarations and failed to comply with court orders to provide financial information in the past. Although due to Arturo's failure to provide adequate information the trial court was unable to quantify Arturo's actual income and financial resources, the trial court implicitly decided that Arturo could afford to pay the attorney fees relating to the motion to modify child support. Consequently, the trial court awarded Paula $15,000 in attorney fees.

Arturo timely appealed from the order granting attorney fees.

## DISCUSSION

### I. Contentions on Appeal

Arturo contends that the trial court abused its discretion in awarding Paula $15,000 as need-based attorney fees because (i) the trial court allegedly did not follow the criteria for awarding attorney fees under sections 2030 and 2032, (ii) the ruling was made beyond the 15-day period set forth in section 2031, and (iii) on due process grounds, the amount of the award should be limited to what Paula actually requested ($7,500). As will be seen, we reject the first two contentions, but agree with the last one.

Additionally, Paula has filed a responsive brief asking that we exercise our discretion to dismiss Arturo's appeal on the ground that Arturo's conduct in the trial court *disentitles* him to having his appeal heard. (See *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 458-460 [where party intentionally refused to comply with several court orders requiring disclosure of his financial condition, his appeal on ground that the trial court failed to consider his finances was dismissed under disentitlement doctrine].) We do not find the circumstances in the present case to be sufficiently egregious to warrant the sanction of dismissal. Accordingly, we will proceed to hear the appeal.

10.

## II.    Criteria for Need-Based Attorney Fees and Standard of Review

During the pendency of a dissolution proceeding, the trial court may order that one party pay some or all of the other party's legal fees and costs.  (§§ 2030, 2032.)  The goal is to ensure parity between the spouses in their ability to have access to effective legal representation, based on a consideration of their relative circumstances.  (*In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 974-975; *In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866.)

The grounds for awarding such attorney fees are set forth in sections 2030 and 2032.  We briefly highlight the relevant language of these statutes.  Section 2030, subdivision (a)(1), requires the court to "ensure that each party has access to legal representation" by ordering, "if necessary based on the income and needs assessments," one party to pay to the other party "whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding .…"  (§ 2030, subd. (a)(1).)  Section 2030, subdivision (a)(2), provides that the trial court shall make certain findings:  "When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties.  If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding attorney's fees and costs."

Section 2032, subdivision (a), elaborates that an award of attorney fees under section 2030 or 2031 may be made "where the making of the award, and the amount of the award, are just and reasonable under the relative circumstances of the respective parties."  Section 2032, subdivision (b), provides that "[i]n determining what is just and reasonable under the relative circumstances," the trial court shall "take into consideration the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the

11.

extent relevant, the circumstances of the respective parties described in Section 4320." Section 2032, subdivision (b), adds the following clarification of the factors to be considered: "The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances."

"Given this statutory framework, a trial court has wide discretion in fashioning an award of attorney fees in marital proceedings. [Citation.] In assessing one party's relative need and the other party's ability to pay, the family court may consider all evidence concerning the parties' current incomes, assets, and abilities, including investments and income-producing properties." (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 662.) In that assessment, the court may also consider the parties' expenses and "new mate or partner income." (*Alan S. v. Superior Court* (2009) 172 Cal.App.4th 238, 253, 255 [the latter being relevant because of possible economies of scale and the effect on ability to pay].) Further, in determining whether to award attorney fees to one party, the court may consider the other party's trial tactics. (*In re Marriage of Sorge*, *supra*, at p. 662; *In re Marriage of Tharp* (2010) 188 Cal.App.4th 1295, 1314.) Thus, an attorney fees award under sections 2030 and 2032 "should be the product of a nuanced process in which the trial court should try to get the 'big picture' of the case, i.e., 'the relative circumstances of the respective parties' as the statute puts it." (*Alan S. v. Superior Court*, *supra*, at p. 254.) The trial court not only considers financial resources, but also a broader analysis of the parties' relative circumstances. (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1056.)

"In summary, the proper legal standard for determining an attorney fee award requires the trial court to determine how to apportion the cost of the proceedings

equitably between the parties under their relative circumstances. [Citation.] In making this determination, the trial court has broad discretion in ruling on a motion for fees and costs .…" (*In re Marriage of Falcone & Fyke*, *supra*, 203 Cal.App.4th at p. 975.) An award of attorney fees in a dissolution proceeding is a matter left to the trial court's sound discretion, and absent a clear showing of abuse, the trial court's determination will not be disturbed on appeal. (*In re Marriage of Cryer*, *supra*, 198 Cal.App.4th at p. 1054.) "[W]e will not reverse absent a showing that no judge could reasonably have made the order, considering all of the evidence viewed most favorably in support of the order." (*In re Marriage of Falcone & Fyke*, *supra*, at p. 975.)

However, "although the trial court has considerable discretion in fashioning a need-based [attorney] fee award [citation], the record must reflect that the trial court actually exercised that discretion, and considered the statutory factors in exercising that discretion." (*In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 827, fn. omitted.) "While no particular language is required in an order awarding attorney fees under sections 2030 and 2032, the record (including, but not limited to, the order itself), must reflect an actual exercise of discretion and a consideration of the statutory factors in the exercise of that discretion." (*Alan S. v. Superior Court*, *supra*, 172 Cal.App.4th at p. 254.)

## III.     The Trial Court Properly Considered the Statutory Factors

Arturo contends that the trial court did not consider the statutory factors. We disagree. Here, the trial court made a sufficient assessment and comparison of the parties' relative financial circumstances and ability to pay attorney fees. (§§ 2030, 2032.) The trial court considered the evidence of the parties' respective incomes, expenses and other resources, along with Arturo's trial tactics, and determined under the circumstances that there was a disparity in the parties' relative circumstances and it was appropriate for Arturo to pay Paula's attorney fees. It was not that the trial court did not adequately consider Arturo's financial ability or inability to pay. Rather, based on Arturo's track

13.

record of failure to be forthcoming on his income and expense declarations, the trial court found that Arturo lacked any credibility concerning the financial evidence he had submitted. In deciding the matter, the trial court apparently relied on Arturo's past misleading or inadequate income disclosures, his litigation tactics of being able to afford attorneys whenever he wanted for "countless appearances" and repeated unnecessary hearings, and his comfortable lifestyle as indicated by his other expenses (while still being in arrears in the amount of $62,000 on child support), to conclude that Arturo had sufficient financial resources to pay the attorney fees award—i.e., Arturo "ha[d] access to funds [that] he ha[d] not disclosed to the Court" from which he was able to perpetually drive the litigation and hire attorneys. On the record before us, including the trial court's order, we are of the opinion that the statutory factors were adequately considered by the trial court. This ground of Arturo's appeal fails.

To the extent that Arturo is arguing that the trial court's findings were not supported by the evidence, Arturo has failed to produce an adequate record on appeal. The trial court obviously based its ruling on the entire history of the proceedings relating to Arturo's motion to modify child support, including past appearances and financial filings in that matter. Arturo's appeal only provided a record of the most recent income and expense declarations filed by the parties. Therefore, much of what the trial court relied on is not before us. "'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. This is not only a general principle of appellate practice but an ingredient of the constitutional doctrine of reversible error.' [Citations.]" (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) As a consequence, an appellant has the burden of demonstrating reversible error based on adequate legal argument and citation to the record. (*Yield Dynamics, Inc. v. TEA Systems Corp*. (2007) 154 Cal.App.4th 547, 556-557.) A necessary corollary to this rule is that if the record is inadequate for meaningful review, the appellant defaults and the decision of

14.

the trial court should be affirmed. (*Gee v. American Realty & Construction, Inc.* (2002) 99 Cal.App.4th 1412, 1416.) Since Arturo has not provided an adequate record to permit us to evaluate whether the trial court's findings were supported by substantial evidence, the order cannot be attacked on that ground.

In a distinct but related line of argument, Arturo asserts that the trial court failed to adequately consider the reasonableness of the amount of attorney fees. (See § 2032, subd. (b) [trial court to consider what is just and reasonable].) In this regard, Arturo claims that the amount awarded was unreasonable because (i) it was greater than what was sought by Paula and (ii) it exceeded the total outstanding attorney fees set forth in Mr. Minyard's supporting declaration.[4] While these two challenges to the amount of the award are arguably well taken, they are cured and rendered moot by the reduction we make on due process grounds in the last part of our opinion. Therefore, we do not reach these two particular contentions, as it is unnecessary to do so.

Arturo also claims that the amount of the award was unreasonable because the trial court failed to adjust the total attorney fees award downward by $2,499, the amount of an earlier attorney fees award imposed against him. Arturo has failed to demonstrate any error. There is nothing in the record that would require us to conclude that the previous attorney fees award of $2,499 overlapped with, or was duplicative to, the attorney fees awarded by the trial court on November 29, 2011. Indeed, Arturo's opening brief herein described the prior award as a sanction imposed against him on a "property-related motion [Arturo] had filed." No abuse of discretion is shown in regard to the alleged failure to consider the prior attorney fees order of $2,499.

---

**4** Mr. Minyard's declaration stated that through October 4, 2011, his total attorney fees incurred in representing Paula regarding the motion to modify child support was $12,169.75.

15.

**IV.      Trial Court Did Not Lose Jurisdiction to Rule on Attorney Fee Requests**

Arturo contends the trial court lost jurisdiction to rule on the attorney fees motion based on the deadline in section 2031.  Section 2031 states procedural rules that apply when a party requests an award of need-based attorney fees, whether such attorney fees are requested by a written notice of motion or order to show cause (*id*., subd. (a)(1)), or by means of an oral motion made at the hearing (*id*., subd. (b)), as was the case here.  The section provides, in relevant part, that when attorney fees are requested by a written notice of motion or order to show cause, the trial court shall rule on the party's application for attorney fees "within 15 days of the hearing on the motion or order to show cause." (*Id*., subd. (a)(2).)  When a request for attorney fees is made by an oral motion "[a]t the time of the hearing of the cause on the merits," the court shall rule "within 15 days and prior to the entry of any judgment." (*Id*., subd. (b)(1) & (2).)  Arturo argues that the trial court erred in awarding attorney fees to Paula because, allegedly, the trial court's ruling came *after* the 15-day statutory deadline.  Arturo claims the 15-day deadline of section 2031, subdivision (b)(2), expired because the hearing of the cause on the merits (i.e., the motion to modify child support) concluded, at the latest, on November 1, 2011, and the trial court did not rule on the attorney fees motion until November 29, 2011, more than 15 days later.  Moreover, according to Arturo, once the 15-day period expired, the trial court lost jurisdiction to rule on Paula's attorney fees request.

We disagree with Arturo's analysis for several reasons.  First, it is not clearly established by the minimal record before us that the 15-day period actually expired.  Although the hearing on the underlying motion to modify child support (during which Paula's oral motion for fees was made) was apparently concluded on November 1, 2011, the record is ambiguous on that point.  The minute order of the November 29, 2011, hearing indicates that one issue (at least) relating to Arturo's underlying motion did not get finally resolved until the November 29, 2011, hearing.  That is, the minute order for

16.

November 29, 2011, stated in part: "Court does not find the request to modify child support reasonable." If issues relating to the underlying motion to modify child support did not get resolved until the November 29, 2011, hearing, it would not appear that the 15-day period definitely expired prior to the trial court's attorney fees award.

Second, Arturo's contention that the deadline in section 2031 is *jurisdictional* in nature is not supported by any case authority or adequate legal analysis. When points are perfunctorily raised, without adequate analysis and authority, we pass them over and treat them as abandoned. (*Placer County Local Agency Formation Com. v. Nevada County Local Agency Formation Com.* (2006) 135 Cal.App.4th 793, 814 ["We need not address points in appellate briefs that are unsupported by adequate factual or legal analysis."]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [when appellant fails to support a point "with reasoned argument and citations to authority, we treat the point as waived"]; *People v. Stanley* (1995) 10 Cal.4th 764, 793; *Landry v. Berryessa Union School Dist.* (1995) 39 Cal.App.4th 691, 699-700.)

Third and finally, Arturo's argument that the time deadline in section 2031 is jurisdictional is not reasonably tenable. In light of the deficiencies noted above, it is unnecessary for us to reach the issue of statutory construction regarding section 2031; but even if we were to do so, Arturo's position would clearly fail—as we now briefly point out. The prevailing rule is that such time provisions are *directory* in nature, not jurisdictional, unless the statute clearly expresses a contrary intent. "'[G]enerally, requirements relating to the time within which an act must be done are directory rather than mandatory or jurisdictional, unless a contrary intent is clearly expressed.'" (*Woods v. Department of Motor Vehicles* (1989) 211 Cal.App.3d 1263, 1267; accord, *Santa Monica Properties v. Santa Monica Rent Control Bd.* (2012) 203 Cal.App.4th 739, 757.) "Unless the Legislature clearly expresses a contrary intent, time limits are typically deemed directory." (*People v. Allen* (2007) 42 Cal.4th 91, 102.) Here, there is nothing in the language of the statute to indicate that the 15-day deadline was intended by the

17.

Legislature to be jurisdictional in nature. Therefore, Arturo's proposed interpretation cannot be sustained. Moreover, the interpretation urged by Arturo would be contrary to the actual legislative purpose of the time provision in section 2031, which is to require judges to rule *promptly* on such motions to ensure that a party's need for such attorney fees is not unreasonably delayed. (See Stats. 2004, ch. 472, § 2; Analysis of Assem. Bill No. 2148 (2003-2004 Reg. Sess.) Aug. 16, 2004, p. 3.) Since the timing provision is for the benefit of the party needing an attorney fees award (by requiring a prompt ruling on such requests), it would be unreasonable to construe it in such a way as to deprive that same party of the benefit of such attorney fees merely because the trial court was tardy in ruling on the motion.

For all of the foregoing reasons, we reject Arturo's assertion that the trial court did not have jurisdiction to rule on Paula's motion for attorney fees.

## V.     The Due Process Issue

In support of Paula's oral motion for attorney fees, Mr. Minyard, submitted a declaration to substantiate the amount and reasonableness of her request. The declaration was filed pursuant to the former Superior Court of Fresno County, Local Rules, rule 5.2.13(D), the apparent purpose of which was to put the opposing party and the trial court on notice as to the amount and factual basis for attorney fees being requested. Mr. Minyard's billing records in the case were attached as further substantiation. The declaration indicated that Paula's total attorney fees incurred for all services rendered from May 2009 through October 4, 2011, was $12,169.75. However, the declaration stated plainly that the amount of attorney fees being requested by Paula pursuant to section 2030 was $7,500. Neither Paula nor her attorney ever indicated that more than $7,500 would be sought at the hearing. Therefore, on November 1, 2011, when the trial court continued the hearing to November 29, 2011, both parties and the trial court were clearly apprised that Paula was requesting $7,500 in attorney fees.

18.

At the hearing on November 29, 2011, the trial court disregarded Paula's attorney's declaration that $7,500 was the amount claimed by her as reasonable, need-based attorney fees. Instead of looking at the amount of attorney fees actually requested by Paula's motion, the trial court undertook an entirely different methodology for determining the amount of Paula's attorney fees. The trial court added all of the attorney fees apparently incurred by Paula in the case, and then, based on Mr. Minyard's oral representation at the hearing that the child support issue had consumed approximately three-fourths of the attorney time expended on the case since May 2009, the trial court multiplied the total number by three-fourths and concluded that Paula's reasonable attorney fees were just over $15,000. Arturo's counsel, Mr. Rusca, objected to this process at the hearing, pointing out that there was no accounting or other factual showing to confirm the three-fourths percentage, that figure was just an unsubstantiated assumption, and he was not given any advance notice of that issue or any opportunity to disprove or rebut it.

On appeal, Arturo argues that he was not provided adequate notice that an amount greatly in excess of the $7,500 sought by Paula would be at issue at the hearing, and he further argues that he was denied due process when the trial court disregarded the actual amount requested in the motion ($7,500) and, instead, applied an alternative basis for calculating fees without advance notice or an opportunity to respond. On the unique facts of this case, we agree with Arturo. Mr. Minyard's declaration was, in essence, a form of notice that framed the issues for the upcoming hearing—that is, it informed Arturo and the trial court of the amount of attorney fees that Paula claimed to be reasonable, need-based attorney fees under section 2030. When the trial court looked past Paula's motion and the factual basis for it, and granted relief substantially beyond that which Paula had requested by using different grounds for ascertaining her fees, it denied Arturo due process because he was not afforded notice of the issues he would have to meet at the hearing nor given a reasonable opportunity to rebut the factual basis for the methodology,

19.

the percentages used, and the amount arrived at under the trial court's formula. (See, e.g., *Gonzales v. Superior Court* (1987) 189 Cal.App.3d 1542, 1545 [only grounds in notice of motion may be considered by the court]; *Tafti v. County of Tulare* (2011) 198 Cal.App.4th 891, 901 [inadequate notice where party not fairly apprised of nature of hearing or scope of issues that would be considered at hearing]; § 271 [basic rules and principles applicable to civil actions generally also apply to family law proceedings]; 9 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶¶ 9:2.2, p. 9(I)-2 (rev. #1 2012) ["*due process of law* requires adequate notice and opportunity to be heard on any motion that affects the rights of the opposing party"], 9:38, p. 9(I)-23 (rev. #1 2013) [the court cannot grant different relief, or relief on different grounds, than stated in the notice of motion].) Additionally, although the trial court indicated that it was not imposing sanctions, the fact that the trial court ended up doubling the amount of fees requested by Paula strongly suggests that it may have been impermissibly imposing sanctions without providing adequate notice, as is required by law. (*In re Marriage of Duris & Urbany* (2011) 193 Cal.App.4th 510, 513 [case authority condemns imposition of sanctions without prior notice].)

Based on the foregoing, we believe the appropriate remedy is for us to modify the order awarding attorney fees to reflect that the amount of attorney fees awarded to Paula is only $7,500. "'Whenever an appellate court may make a final determination of the rights of the parties from the record on appeal, it may, in order to avoid subjecting the parties to any further delay or expense, modify the judgment and affirm it, rather than remand for a new determination. [Citations.]' [Citations.]" (*Orthopedic Systems, Inc. v. Schlein* (2011) 202 Cal.App.4th 529, 547.)

## **DISPOSITION**

The order awarding attorney fees is modified to reflect that the amount awarded to Paula is $7,500.  The order is affirmed as modified.  Each party shall bear their own costs on appeal.

 

 

_____

Kane, Acting P.J.

WE CONCUR:

 

_____

Franson, J.

 

_____

Oakley, J.[*]

---

[*] Judge of the Madera Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

21.