[No. B228461. Second Dist., Div. Six. Aug. 13, 2012.]

In re the Marriage of JOHN M. and LISA M. HOFER.
JOHN M. HOFER, Appellant, v.
LISA M. HOFER, Respondent.

## COUNSEL

Ferguson Case Orr Paterson, Gregory W. Herring, Douglas K. Goldwater and Wendy C. Lascher for Appellant.

Goldenring & Prosser and Peter A. Goldenring for Respondent.

OPINION

**GILBERT, P. J.**—In this marital dissolution action, the trial court orders the husband to pay the wife's attorney fees and costs pursuant to Family Code section 2030.[1] The husband appeals and contends the evidence of his financial circumstances is insufficient. Perhaps. But here sufficiency of the evidence is beside the point. The husband chose not to disclose evidence of his financial circumstances despite three separate discovery orders and sanctions. This choice "disentitles" the husband to a choice accorded most litigants, the choice to appeal. The appeal is dismissed.

## FACTS

John M. and Lisa M. Hofer were married in 1991.[2] They have two minor children. John filed a petition for dissolution of the marriage on January 9, 2009.

Lisa did not work outside the home during the marriage. John has an ownership interest in several business entities owned by his family. Within the marriage, John was the sole manager of these assets. Information regarding their value, income stream and possible community ownership is solely within his knowledge. It is undisputed that John has substantial income and assets derived from his family's businesses. How substantial? Lisa has been unable to discover.

Lisa issued two sets of demands for production of documents and one set of interrogatories. John failed to provide sufficient responses to three discovery requests. Lisa moved to compel responses. The trial court granted the motion and sanctioned John $7,500. It noted that a new motion to compel had been filed. The court said it would appoint a discovery referee to rule on further discovery disputes.

Lisa's new motion was to compel John to appear for a deposition and produce documents. The trial court appointed retired Judge Melinda Johnson as discovery referee. The referee found that John was properly served, but he refused to appear for his deposition. The referee recommended the court grant Lisa's motion and sanction John $5,200 in attorney fees and $470 in costs. The court adopted the recommendation.

---

[1] All statutory references are to the Family Code unless stated otherwise.
[2] We shall refer to the parties by their first names, not from disrespect but to ease the reader's task.

John appeared for the deposition as ordered, but failed to bring the requested documents. Lisa again moved to compel production of the documents. She requested the trial court sanction John in this manner: deem the business entities John claimed as his separate property as community property.

The referee stated in part: "Without these documents, [Lisa] cannot determine what, if any interest, the community has in any assets, nor can she rebut [John's] assertion that assets are his separate property. Nor can [Lisa] understand [John's] income and assets adequately to bring an OSC for support or attorney's fees. It appears there has been no Family Code [section] 2030 attorney fee order in this matter. As a consequence [Lisa] now seeks an order that prevents [John] from proving that any of the mentioned assets are, in fact, his separate property. [¶] [Lisa's] frustration is genuine and appropriate. Her proposed remedy is draconian and disfavored. This case is well over a year old and [Lisa] has none of the critical information needed to even evaluate the issues, much less assert and prove a position. . . ."

The referee recommended that John be given one more chance to produce the documents before being precluded from presenting evidence that the business entities are his separate property. The referee recommended that John be sanctioned $14,600 in attorney fees and $40 in costs. The trial court adopted the referee's recommendation.

Lisa moved for attorney fees pursuant to section 2030. After a hearing, the trial court found in part:

"Through June 10, 2010 [Lisa] had incurred $164,982.19 in fees and costs and had paid $47,734.32. [Lisa] claims no monthly income with estimated monthly expenses in excess of $24,000.00. As of August 12, 2010, [John] claims to have paid his attorneys $300,677.00. [John] claims monthly income of $24,000.00 and expenses of $48,819.00.

"[John] argues that he has paid virtually all of [Lisa's] fees thus far. That is true. However, [Lisa] has no source of income except through [John]. There exist no child or spousal support orders, arguably because [Lisa] cannot determine the full extent of funds available for support. The discovery disputes continue. Because of those discovery disputes the court knows little about the income or resources of [John], other than the arguments set forth by both sides.

"What is clear is that [John] has been able to pay his attorneys more than $300,000.00 and has paid [Lisa's] counsel $47,734.32. While the extent of [John's] resources is not totally known, it is clear that he has resources

sufficient to keep his fees to his attorneys current. With no separate resources of her own, [Lisa] is entitled pursuant to *Family Code* § 2030 to a contribution to her fees and costs. [John] is therefore ordered to pay to [Lisa] as a contribution to her attorney fees and costs the unallocated sum of $200,000.00."

## DISCUSSION

### *Entitlement*

### I

■ Section 2030, subdivision (a)(1) requires the trial court in a dissolution proceeding to ensure that each party has access to legal representation. If necessary, the trial court may order one party to pay the other party's "reasonably necessary" attorney fees "based on the income and needs assessments" of the parties. (*Ibid.*)

John cites *In re Marriage of Mosley* (2008) 165 Cal.App.4th 1375, 1386 [82 Cal.Rptr.3d 497], for the proposition that in exercising its discretion the trial court must take into account the circumstances of the parties, their necessities and financial ability. He argues that the trial court ordered him to pay $200,000 in attorney fees without evidence of his financial ability to pay. He points out the court stated that it knows little about his income or resources, other than the arguments made by the parties.

What John does not mention is why the trial court knows so little about his income or resources. He steadfastly refused to comply with Lisa's legitimate discovery requests and the orders of the court.

John does not deny that he has or can obtain the information. He simply asserts that the business entities owned by him and his family will not allow him to disclose it. He cites no authority to explain how the desires of these business entities, of which he is at least part owner, can prevail over a court order.

Nor does John challenge any of the discovery orders. Instead, he claims they are not relevant. But his refusal to abide by the rules for discovery precluded the trial court from considering the very evidence he claims is necessary to support the attorney fee award.

■ Where a party unlawfully withholds evidence of his income and assets, he will not be heard to complain that an order is not based on the evidence he refuses to disclose. If John wished the trial court to have

considered all of the circumstances in making an attorney fee award, the simple solution would have lain in his own hands: disclose the information. But instead John closed the door to an appeal from the trial court's order and threw away the key.

■ The disentitlement doctrine enables an appellate court to stay or to dismiss the appeal of a party who has refused to obey the superior court's legal orders. (*Say & Say v. Castellano* (1994) 22 Cal.App.4th 88, 94 [27 Cal.Rptr.2d 270].) "Dismissal is not ' "a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance" ' with a presumptively valid order." (*Ibid.*, quoting *Stone v. Bach* (1978) 80 Cal.App.3d 442, 446 [145 Cal.Rptr. 599].) Thus, the disentitlement doctrine prevents a party from seeking assistance from the court while that party is in "an attitude of contempt to legal orders and processes of the courts of this state." (*MacPherson v. MacPherson* (1939) 13 Cal.2d 271, 277 [89 P.2d 382].)

John cites criminal and civil cases in which the disentitlement doctrine applies, but argues the dissimilar facts in those cases compared to the facts here make his cases distinguishable. (*Polanski v. Superior Court* (2009) 180 Cal.App.4th 507 [102 Cal.Rptr.3d 696] [defendant was a fugitive from justice and was not entitled to an appeal]; *Stone v. Bach, supra,* 80 Cal.App.3d 442 [defendant twice disobeyed the court's order to pay specified funds to plaintiff, among other things]; *Tobin v. Casaus* (1954) 128 Cal.App.2d 588 [275 P.2d 792] [defendant failed to appear for debtor's examination resulting in a warrant for his arrest]; *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669 [34 Cal.Rptr.2d 244] [defendants failed to comply with order to deposit income with a receiver]; *In re Kamelia S.* (2000) 82 Cal.App.4th 1224 [98 Cal.Rptr.2d 816] [father absconded with minor]; *Guardianship of Melissa W.* (2002) 96 Cal.App.4th 1293 [118 Cal.Rptr.2d 42] [grandparents denied placement and guardianship and their counsel absconded with minor]; *MacPherson v. MacPherson, supra,* 13 Cal.2d 271 [husband's appeal contesting wife's attorney fee order was dismissed after he left the country with the couple's children in defiance of a custody order in favor of wife].)

Citing *People v. Puluc-Sique* (2010) 182 Cal.App.4th 894, 897 [106 Cal.Rptr.3d 365], John argues "[t]he disentitlement doctrine applies only 'when the balance of the equitable concerns make it a proper sanction.' " We agree. And that is why we add John's attempted appeal to the list of cases he cites. Although the facts in those cases differ from those here, the principle is the same.

We need not determine whether the sanction orders issued against John qualify as judgments of civil contempt pursuant to Code of Civil Procedure

section 1209 et seq. The successive orders that gave rise to sanctions contain judicial findings that John has persisted in willfully disobeying the trial court's orders. The principle permitting this court to stay or dismiss an appeal does not require a formal judgment of civil contempt. It "is based upon fundamental equity and is not to be frustrated by technicalities," such as the absence of a formal citation and judgment of contempt. (*Stone v. Bach, supra,* 80 Cal.App.3d at p. 444.)

John's refusal to comply with three separate court orders entitles this court to dismiss his appeal. With the information it had, the trial court did its best to award attorney fees and costs. The court was not required to wait until John decided whether he would comply with discovery orders.

## II

### *Some Dicta*

### *If John Could Appeal, the Result Would Not Change*

John claims the uncontradicted evidence is that he will be forced to borrow money. He points to his own declaration to that effect. But John confuses uncontradicted evidence with credible evidence. The trier of fact may reject even uncontradicted evidence as not credible. (See *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1028 [213 Cal.Rptr. 69].) Indeed, in light of John's refusal to respond to discovery demands, there is little reason for the trial court to find anything he says about his finances credible.

In any event, section 2032, subdivision (c) provides the trial court may order payment of the award of attorney fees and costs "from any type of property, whether community or separate, principal or income." The subdivision shows the court has very broad discretion in ordering the payment of attorney fees and costs. Neither the subdivision nor any other authority prohibits the trial court from making orders that require a party to borrow money under appropriate circumstances. As the trial court noted, John paid his attorney over $300,000.

John's reliance on *In re Marriage of Mosley, supra,* 165 Cal.App.4th 1375, is misplaced. There the trial court's order required the husband to pay nearly 100 percent of his take-home pay in support payments. The order forced husband to rely on a discretionary bonus with only a one-year history to support himself. The Court of Appeal stated, "[The order] placed [husband] in a position of having to borrow for his living expenses, and thus resulted in a miscarriage of justice." (*Id.* at pp. 1386–1387.)

*Mosley* does not stand for the proposition that as a matter of law there is always a miscarriage of justice where an order requires a party to borrow. *Mosley* stands only for the proposition that under the circumstances of that case, the order worked a miscarriage of justice. (*In re Marriage of Mosley, supra,* 165 Cal.App.4th at pp. 1386–1387.) Because the husband in *Mosley* disclosed his financial circumstances, the Court of Appeal was able to make that determination. Here, unlike the husband in *Mosley,* John refused to make that disclosure. Thus John cannot carry his burden on appeal of showing an abuse of discretion.

The appeal is dismissed. Costs are awarded to Lisa.

Yegan, J., and Coffee, J.,* concurred.

A petition for a rehearing was denied September 12, 2012, and appellant's petition for review by the Supreme Court was denied November 20, 2012, S205582. Kennard, J., was of the opinion that the petition should be granted.

---

*Retired Associate Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.