Filed 1/30/14  Marriage of Maxwell CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of RONALD VERDANE MAXWELL and KATHERINE ELIZABETH MAXWELL. | |
| RONALD VERDANE MAXWELL, Respondent, v. KATHERINE ELIZABETH MAXWELL, Appellant. | F065915 (Super. Ct. No. 457186) Stanislaus County **OPINION** |

APPEAL from an order of the Superior Court of Stanislaus County.  Loretta Murphy Begen, Judge.

Borton Petrini and John J. Hollenback, Jr., for Appellant.

Goss & Goss, Mark A. Goss and Michael A. Goss for Respondent.

-ooOoo-

In this dissolution action, wife challenges an order awarding pendente lite attorney fees and costs to husband's attorneys.  She contends the trial court abused its discretion in

making the award because it relied on an incomplete income and expense declaration and insufficient information about husband's finances, husband was disentitled to an award of fees and costs because he withheld information, and the amount of the award was excessive. We find no abuse of discretion and affirm.

## *FACTUAL AND PROCEDURAL BACKGROUND*

The parties were married, then divorced, then remarried. After approximately eight years, Ronald[1] petitioned for dissolution of the second marriage. Two months later, Ronald requested spousal support, exclusive possession of the residence in which he then lived, and attorney fees and costs to maintain his legal representation. Ronald asserted he was 70 years old and unable to work, Katherine was an heiress with a large income from a trust, and her income had supported them during marriage, but after separation he received no income from her. Ronald's initial income and expense (I & E) declaration indicated he had no income, but had $4.5 million in personal property assets. In an updated I & E declaration, filed May 18, 2012, Ronald reported monthly Social Security income of $1,142, and also stated: "My income varies month to month from the sale of assets to pay my living expenses since Respondent stopped providing funds to me for living expenses." He reiterated that he had $4.5 million in personal property assets.[2]

In numerous subsequent filings, Katherine submitted evidence she was 67 years old and unable to work due to health issues; her income was not as high as represented by Ronald, although she conceded the trust of which she was a beneficiary had a total value of $55 million. Her I & E declaration indicated her net disposable income was $43,000 per month from the trust and a partnership. The amount of the distributions she received

---

[1] We refer to the parties by their first names for convenience and clarity, because they share a last name. No disrespect is intended.

[2] Ronald's attorney later attempted to qualify that statement, asserting he placed the number on the form and it represented his and his client's estimate of the property of both spouses, exclusive of the trust, not property within Ronald's possession or control.

from the trust was entirely within the discretion of the trustee, Wilmington Trust; the trust also directly paid some of Katherine's expenses. Each party objected to the other's I & E declaration as incomplete.

Katherine declared Ronald took $3.7 million of her separate property assets in the form of proceeds from the sale of her real estate. She also accused him of misappropriating $3 million of her jewelry. Katherine asserted Ronald had thousands of dollars of assets kept in multiple storage units, some of which were in Ronald's name and some of which were in the name of his ex-wife, Linda Maxwell, or in both their names. Katherine asserted the property in the storage units was probably her separate property or property obtained with her separate property funds.

Katherine contended Ronald had deposited $18,000 to $20,000 per month in his bank account after separation without an explanation of its source. Ronald asserted the funds came from sales of assets and loans. Katherine asserted the deposits were probably the result of the sale of her separate property assets. At her request, the trial court issued a "standstill" order, prohibiting anyone from removing property from the storage units without the trial court's permission. Ronald objected to that order, complaining that, if he could not remove and sell the property in storage, he would have no funds with which to support himself or pay his attorneys.

After multiple hearings, the court granted Ronald's motion for attorney fees and ordered Katherine to pay Ronald's attorneys $100,000. The court noted Ronald had already paid his attorneys $25,000, and included in the order a provision that Katherine would have a credit against any future award of fees for the $25,000 Ronald had already paid. The $100,000 amount was to cover $75,000 in fees already incurred and $25,000 for anticipated future fees. Katherine appeals the attorney fee order, contending the court had insufficient information before it to make a ruling on the request for fees because the I & E declaration Ronald filed was incomplete and inaccurate, Ronald was "disentitled"

3

to an award of attorney fees because he improperly withheld information concerning his income and assets, even after being ordered to provide it, the award was excessive in light of Ronald's assets and the limited issues in the case, and the trial court abused its discretion by basing its award of attorney's fees on the amount Katherine spent on her attorneys.

## *DISCUSSION*

### I.  Standard of Review

An order made during the pendency of a dissolution proceeding requiring one spouse to pay the attorney fees of the other spouse is reviewed for abuse of discretion. "'A motion for attorney fees and costs in a dissolution action is addressed to the sound discretion of the trial court, and in the absence of a clear showing of abuse, its determination will not be disturbed on appeal. [Citations.] The discretion invoked is that of the trial court, not the reviewing court, and the trial court's order will be overturned only if, considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made. [Citations.]' [Citation.]" (*In re Marriage of Keech* (1999) 75 Cal.App.4th 860, 866 (*Keech*).)

### II.  Attorney Fees Award

"In a proceeding for dissolution of marriage, nullity of marriage, or legal separation of the parties, … the court shall ensure that each party has access to legal representation, including access early in the proceedings, to preserve each party's rights by ordering, if necessary based on the income and needs assessments, one party … to pay to the other party, or to the other party's attorney, whatever amount is reasonably necessary for attorney's fees and for the cost of maintaining or defending the proceeding during the pendency of the proceeding." (Fam. Code, § 2030, subd. (a)(1).)[3] ""California's public policy in favor of expeditious and final resolution of marital

---

[3]  All further statutory references are to the Family Code unless otherwise indicated.

dissolution actions is best accomplished by providing at the outset of litigation, consistent with the financial circumstances of the parties, a parity between spouses in their ability to obtain effective legal representation.'" [Citation.]" (*Keech, supra*, 75 Cal.App.4th at p. 866.)

"The family court has considerable latitude to make a just and reasonable fee award." (*In re Marriage of Cryer* (2011) 198 Cal.App.4th 1039, 1054.) In making the award, the trial court must consider "the need for the award to enable each party, to the extent practical, to have sufficient financial resources to present the party's case adequately, taking into consideration, to the extent relevant, the circumstances of the respective parties described in Section 4320." (§ 2032, subd. (b).) Pursuant to section 4320, the factors to be considered include:

"(c) The ability of the supporting party to pay spousal support, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.

"(d) The needs of each party based on the standard of living established during the marriage.

"(e) The obligations and assets, including the separate property, of each party. [¶] … [¶]

"(h) The age and health of the parties. [¶] … [¶]

"(k) The balance of the hardships to each party. [¶] … [¶]

"(n) Any other factors the court determines are just and equitable." (§ 4320, subds. (c), (d), (e), (h), (k), (n).)

"When a request for attorney's fees and costs is made, the court shall make findings on whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties. If the findings demonstrate disparity in access and ability to pay, the court shall make an order awarding

5

attorney's fees and costs." (§ 2030, subd. (a)(2).) The award of attorney fees must be "just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).)

### A. Incomplete I & E declaration

Katherine contends Ronald's request for attorney fees should have been denied because he failed to file a complete and accurate I & E declaration in support of the request. When Ronald filed his initial request for attorney fees in December 2011, former rule 5.128 of the California Rules of Court,[4] provided:

> "(a) A current *Income and Expense Declaration* … must be served and filed by any party appearing at any hearing at which the court is to determine an issue as to which such declarations would be relevant.… Those forms must be sufficiently completed to allow determination of the issue.

> "(b) When a party is represented by counsel and attorney's fees are requested by either party, the section on the *Income and Expense Declaration* pertaining to the amount in savings, credit union, certificates of deposit, and money market accounts must be fully completed, as well as the section pertaining to the amount of attorney's fees incurred, currently owed, and the source of money used to pay such fees."

When Katherine responded to the request for fees in April 2012, and when the matter was heard and decided in August 2012, the applicable rule specifically applied to "attorney's fees and costs based on financial need, as described in Family Code sections 2030, 2032 .…" (Rule 5.427(a)[5].) It provided that, in requesting attorney's fees, a party "must complete, file and serve" an I & E declaration, among other documents. (Rule 5.427(b)(1)(C).) Further, "[b]oth parties must complete, file, and serve a current *Income and Expense Declaration*," which must be "sufficiently completed to allow determination of the issues." (Rule 5.427(d)(1).) Additionally, "[w]hen attorney's fees are requested

---

**4**    All further rule references are to the California Rules of Court unless otherwise indicated. Former rule 5.128 was repealed effective January 1, 2013.

**5**    Rule 5.427, formerly rule 5.93, was renumbered effective January 1, 2013.

by either party, the section on the *Income and Expense Declaration* … related to the amount in savings, credit union, certificates of deposit, and money market accounts must be fully completed, as well as the section related to the amount of attorney's fees incurred, currently owed, and the source of money used to pay such fees." (Rule 5.427(d)(2).)

Ronald filed two I & E declarations in connection with his request for attorney fees. The later one, dated May 18, 2012, reflects income of $1,142 per month from Social Security, deposit accounts of approximately $6,000, personal property assets valued at $4.5 million, and expenses of almost $56,000 per month. It also noted that his income "varie[d] month to month from the sale of assets to pay [his] living expenses." Based on deposits to his bank account, Katherine asserts the evidence showed Ronald had income of at least $18,000 to $20,000, which was not reflected in the I & E declaration. She also argues that, although the trial court properly found that Ronald's expenses were "grossly overstated," it had no accurate information about his expenses on which to base a conclusion about his level of income and need for an award of attorney fees.

Although rule 5.427 required both parties to complete, file, and serve an I & E declaration, neither party's declaration contained complete information. Ronald's did not specify how much income he obtained monthly from the sale of assets and the trial court found the expense information was inaccurate. Katherine's declaration omitted any information about her assets, including bank accounts and real and personal property, although she asserted her separate property ownership of at least two pieces of real property—the residence she occupied in Trinidad and the residence on Rodden Road in Oakdale that Ronald occupied until the trial court ordered him to vacate it.[6]

---

**6** After filing her initial I & E declaration on May 15, 2012, Katherine filed a document entitled "Respondent's Further Responses to Income & Expense Declaration," in which she stated under penalty of perjury that she had $3,000 in a checking account, owned the real properties on Rodden Road and in Trinidad, both of which had no equity due to liens, and would provide information about her stocks, bonds, and other assets only in camera. None of this

Katherine contends the trial court abused its discretion by granting Ronald's motion for attorney fees when he had not filed a complete and accurate I & E declaration. Former rule 5.128 and rule 5.427 both required only that the declarations "be sufficiently completed to allow determination of the issues." (Former rule 5.128(a); rule 5.427(d).) The trial court found Ronald filed an I & E declaration on May 18, 2012, and it provided "sufficient evidence to at least consider the income, assets and other financial circumstances of the parties." Based on his I & E declaration and other evidence, the trial court found Ronald had approximately $4.5 million in assets and appeared to be running a business; it found he had an income of approximately $20,000 per month. It concluded his estimate of monthly expenses was grossly overstated and a more reasonable measure of his expenses was $7,000. The result was "a monthly cash flow in excess of his expenses of approximately $13,000." The trial court found Katherine had an average income from her trust of approximately $43,000 per month, and expenses of approximately $26,244 per month.

The evidence indicated neither spouse worked during the marriage; both were supported by the income from Katherine's trust or the sale of her real property. Both were over 65 and had health issues. There was no evidence Ronald had any income other than Social Security and the proceeds of the sale of his personal property assets. Katherine contended those assets were acquired by Ronald using money misappropriated from her during the marriage; apparently, she claims them as either community property or her separate property. Katherine obtained standstill orders, preventing Ronald from removing or selling personal property stored in the storage units, on the premises of the Rodden Road property, or on the premises of another residence Ronald rented in Santa

information was included in her subsequent June 18, 2012, I & E declaration, however. The value of the real property was not disclosed. No value was stated for any personal property.

8

Barbara, without first making an inventory of the property and obtaining the court's consent to removal and sale.

The trial court reviewed the relevant factors to be considered, including the needs of each party and the ability to pay. It noted that the fact the requesting party has sufficient financial resources to pay that party's own attorney fees does not bar an order requiring the other party to pay part or all of the requesting party's fees and costs. (§ 2032, subd. (b).)[7] After considering the evidence presented, the trial court concluded there was a disparity in the parties' access to funds to retain counsel, and Katherine was able to pay both parties' legal fees. Accordingly, consistent with section 2030, subdivision (a)(2), it ordered Katherine to pay Ronald's attorney $100,000 for attorney fees and costs, consisting of $75,000 for fees already incurred and $25,000 for the remainder of the litigation. The trial court reserved jurisdiction of the issue of reimbursement, to determine whether assets held in Ronald's name, or in the names of Ronald and Linda, should be sold to reimburse Katherine for some or all of the fees awarded.

Although the parties did not supply complete information in their I & E declarations, the trial court had sufficient information before it on which to base a decision on Ronald's request for attorney fees and costs. It had estimates of Katherine's monthly income and expenses; it knew Ronald's only income was from Social Security and the sale of assets. It had information about Ronald's claimed expenses, and it

---

**7** "Section 2032, subdivision (a) permits a court to make an award of attorney fees that are 'just and reasonable under the *relative circumstances* of the respective parties.' (Italics added.) Specifically, '[t]he fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested,' and '[f]inancial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances.' [Citation.]" (*In re Marriage of Sorge* (2012) 202 Cal.App.4th 626, 663.)

9

significantly reduced that amount, based on its consideration of the items and amounts claimed. The court did not abuse its discretion by making an award of attorney fees to Ronald. We cannot say that, "'considering all the evidence viewed most favorably in support of its order, no judge could reasonably make the order made.'" (*Keech, supra*, 75 Cal.App.4th at p. 866.)

Citing *Keech*, Katherine argues that an award of attorney fees to one party cannot be based solely on the amount of fees incurred or paid by the other party to that party's own attorneys. (*Keech, supra*, 75 Cal.App.4th at pp. 870-871.) Katherine cites nothing in the record suggesting the award was based solely on the amount Katherine paid or agreed to pay her attorneys for their work on this matter. On the record, the trial court discussed the factors to be considered, and the financial status of both parties—their incomes, assets, sources of income, and expenses. It made its decision based on consideration of all the factors discussed. The written order reflects that decision.

Additionally, there is nothing to prevent the trial court from considering the amount of both parties' attorney fees, along with other factors, in determining whether an award is appropriate and the amount of that award. The goal of an award of attorney fees is to achieve parity in the spouses' ability to obtain effective legal representation. (*Keech, supra,* 75 Cal.App.4th at p. 866.) If the evidence shows the party with greater resources has incurred large attorney fees, we perceive no reason why that information should not be a factor to consider in determining whether an award of fees should be made to the other party and its amount. The trial court may also take into account the reasons for the greater expenditures, for example, whether they reflected that party's attempts to overwhelm the other with oppressive discovery or were the result of responding to the other party's dilatory or obstructive tactics. Consequently, even if the trial court considered Katherine's attorney fees, along with other information, in making its decision, we find no abuse of discretion.

## B.      *Disentitlement*

Citing *In re Marriage of Hofer* (2012) 208 Cal.App.4th 454 (*Hofer*), Katherine argues Ronald is disentitled to an award of attorney fees because he failed to provide complete information regarding his finances.  In *Hofer*, the husband had an ownership interest in several businesses; the wife did not work outside the home and had no income of her own.  The wife sent discovery demands to the husband, designed to obtain information about the assets he managed, their value, and whether they were community or separate.  After the wife pursued multiple successful motions to compel, the husband still refused to produce the required information and documents.  The husband had spent $300,000 on his own attorneys.  The trial court ordered the husband to pay $200,000 toward the wife's attorney fees, and he appealed, contending the trial court had insufficient evidence of his ability to pay when it made the award.  (*Id*. at pp. 456-458.) The trial court lacked such evidence because the husband "steadfastly refused to comply with [the wife's] legitimate discovery requests and the orders of the court."  (*Id*. at p. 458.)

"Where a party unlawfully withholds evidence of his income and assets, he will not be heard to complain that an order is not based on the evidence he refuses to disclose.…  [¶] The disentitlement doctrine enables an appellate court to stay or to dismiss the appeal of a party who has refused to obey the superior court's legal orders. [Citation.]  'Dismissal is not "'a penalty imposed as a punishment for criminal contempt. It is an exercise of a state court's inherent power to use its processes to induce compliance'" with a presumptively valid order.'  [Citation.]  Thus, the disentitlement doctrine prevents a party from seeking assistance from the court while that party is in 'an attitude of contempt to legal orders and processes of the courts of this state.'  [Citation.]" (*Hofer, supra*, 208 Cal.App.4th at pp. 458-459.)

11

The doctrine "'applies only "when the balance of the equitable concerns make it a proper sanction."'" (*Hofer, supra*, 208 Cal.App.4th at p. 459.) The trial court's orders contained findings that the husband had persisted in willfully disobeying its orders. (Id. at p. 460.) Under the disentitlement doctrine, the court found the husband's refusal to comply with the trial court's orders entitled it to dismiss his appeal, and it did so. (*Id*. at pp. 460, 461.)

The disentitlement doctrine allows the appellate court to deny an appellant access to that court on the ground appellant willfully refused to comply with lawful orders of the trial court. Katherine does not ask us to apply the disentitlement doctrine to dismiss her appeal. Rather, she asserts it should be used to prevent Ronald from obtaining pendente lite attorney fees because he is unlawfully withholding evidence of his income and assets. In her argument, however, Katherine has not identified any order in which the trial court found Ronald willfully refused to provide information he was ordered to produce. Further, it appears Katherine also failed to produce complete information about her assets in the trial court. Accordingly, this is not a case in which "'"the balance of the equitable concerns make it a proper sanction."'" (*Hofer, supra*, 208 Cal.App.4th at p. 459.) The trial court had before it sufficient information on which to base an order for attorney fees; it reserved jurisdiction to later order reimbursement. This is not an appropriate situation in which to apply the disentitlement doctrine.

## C.     *Amount of attorney fees ordered paid*

Katherine contends the trial court abused its discretion when it ordered her to pay "the entire $100,000 of attorney fees sought by Ronald." She asserts there was little disparity in the incomes of the two parties ($13,000 per month for Ronald versus $17,000 for Katherine), and none of the cases relied on by the trial court required one party to pay all of the other party's attorney fees.

12

The trial court found Ronald had an approximate average monthly income of $20,000 and expenses of $7,000, for a monthly cash flow in excess of expenses of $13,000. It found Katherine received an average of $43,000 income from her trust and had $26,244 per month in expenses. Her June 14, 2012, I & E declaration and the declaration of the trustee, however, indicated the trust paid $16,324 of her expenses directly; less than $10,000 of her expenses was paid out of the $43,000 distributed to her. Accordingly, the disparity in incomes is much greater than the $4,000 asserted by Katherine.

Additionally, with the exception of $1,142 he received from Social Security, Ronald's income came from sales of assets.[8] Most of his living expenses, as well as his attorney fees, had to be paid out of the proceeds of the sale of assets. There was no evidence Katherine was required to sell assets in order to meet her expenses and attorney fees. To the contrary, substantial evidence supported the trial court's finding that she had the ability to pay her own attorney fees and Ronald's.

Regarding one party paying all of the other party's attorney fees, Katherine cites no authority precluding such an order. Ruling on a motion for pendente lite attorney fees requires an exercise of discretion that takes into consideration the facts of the particular case. (*Keech, supra*, 75 Cal.App.4th at p. 866; *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1219.) We have been cited to nothing that prevents the trial court from requiring one party to pay all of the other party's attorney fees, where the circumstances of the particular case make such a disposition appropriate.

Moreover, the trial court did not require Katherine to pay all of Ronald's attorney fees. Ronald requested $79,000 for his past attorney fees and

---

[8] We note that if, as Katherine seems to contend, the $4.5 million in assets reflected in Ronald's I & E declaration is actually Katherine's separate property that should be confirmed to her as such, then Ronald has no income other than Social Security and his case for an award of pendente lite attorney fees is even more compelling.

13

$33,000 for future fees. The trial court awarded $75,000 for past fees and $25,000 for future fees. It recognized the award of future fees would be insufficient to cover all of Ronald's future fees. The trial court also ordered that, in any subsequent award of fees, Katherine be given a credit for the $25,000 already paid by Ronald to his attorneys. It reserved jurisdiction to require Ronald to reimburse some or all of the fees paid by Katherine.

The evidence before the trial court indicated Katherine had liquid assets; she received money from the trust monthly. Ronald, however, was required to sell assets to obtain most of his monthly income. Thus, unlike Katherine, he was depleting his existing assets each month in order to pay his expenses and attorney's fees. Further, the trial court required Ronald to obtain its consent before selling assets stored in the storage facilities or at specified residences, making his assets even less liquid. Under these circumstances, we find no abuse of discretion in the trial court's order that Katherine pay $100,000 of Ronald's attorney fees, subject to its later consideration of the reimbursement issue.

Katherine also argues the $100,000 award was excessive because this is "a single issue case" and "no community property exists to characterize or divide." Katherine cites nothing in the record to support her claim there is no issue regarding characterization or division of community property. Katherine's Response and Request for Dissolution did not deny there is community or quasi-community property to be divided. Counsel for Ronald stated the $4.5 million in assets reflected in his I & E declaration was what he believed to be the amount of community or separate property possessed by both parties. The trial court apparently believed characterization of property as community or separate was an issue in the case; it stated it had reasonable cause to believe the property reflected in Ronald's I & E declaration was obtained either by community property or by Katherine's separate property funds. It observed that, once the assets were liquidated, "[w]e will then have to determine the characterization and battle it out appropriately."

14

The trial court was familiar with the pleadings and issues in this case and we will not second guess its finding that an award of $100,000 in attorney fees and costs was reasonably necessary to enable Ronald to obtain effective legal representation and adequately present his case. Katherine has not demonstrated an abuse of discretion by the trial court.

## ***DISPOSITION***

The August 31, 2012, order awarding pendente lite attorney fees and costs in the amount of $100,000 to Ronald's attorneys is affirmed. Ronald is entitled to his costs on appeal.

_____
HILL, P. J.

WE CONCUR:


_____
CORNELL, J.


_____
HOFF, J.*

_____
*      Judge of the Superior Court of Fresno County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15