Filed 11/10/25  Marriage of O'Hill CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re the Marriage of ANDREA and ROBERT O'HILL. | |
| ANDREA RAE O'HILL, | G063223 |
| Respondent, | (Super. Ct. No. 17D003156) |
| v. | O P I N I O N |
| ROBERT O'HILL et al., | |
| Appellants. | |

Appeal from a judgment order of the Superior Court of Orange County, James L. Waltz, Judge. Dismissed.

Law Offices of Steven E. Briggs and Steven E. Briggs; Law Offices of Saylin & Swisher, Brian G. Saylin for Appellant.

Phillips Whisnant Gazin Gorczyca & Curtin, Ben Phillips, Gary S. Gorczyca and Megan I. Martinez for Respondent.

\*　　　　\*　　　　\*

This is another appeal brought by appellant Robert O'Hill (Robert) in this contentious, long-running marital dissolution action. He appeals from an order granted, but with modifications he finds objectionable, his ex parte request for the sale of a residential property. The trial court transformed his proposal to pay respondent Andrea Rea O'Hill (Andi) $200,000 from the sale proceeds into an order requiring a $500,000 payment as a contribution toward her attorney fees and costs. The court also denied his request for a hearing on any denied ex parte relief.

Robert contends the trial court exceeded its jurisdiction and denied him due process by entering a *sua sponte* order for attorney fees without a noticed motion and by refusing to set a hearing on his request as required by statute. Andi argues the court acted within its authority to enforce its prior orders and that the matters submitted to the court embraced attorney fees. More fundamentally, she encourages us to dismiss this appeal under the disentitlement doctrine based on Robert's persistent and willful refusal to comply with court-ordered support and fee awards.

We grant Andi's request to dismiss the appeal. The record reflects a history of Robert's willful noncompliance with the trial court's orders, resulting in substantial arrearages—over $1 million—in attorney fees owed to Andi. This noncompliance is particularly glaring in light of the trial court's findings regarding Robert's immense wealth, together with the fact that he has paid his own fees in full. Because Robert has defied the very court whose orders he now asks us to review, we exercise our discretion to dismiss the appeal.

STATEMENT OF FACTS

The following quotations are taken from our prior nonpublished opinion, *O'Hill v. O'Hill* (Oct. 1, 2024; G062146) (*O'Hill 1*).

"Andi filed the present dissolution proceeding in April 2017. At that time, the parties had three minor children (one of whom is now an adult).

"On February 18, 2018, Andi filed a request for order ("RFO") for child support, spousal support, and an award of attorney fees and forensic accountant costs. The hearing on Andi's RFO commenced on June 12, 2018, and continued on portions of seven court days scattered over thirteen months. The hearing featured extensive evidence of the parties' finances and testimony from both sides' forensic accountants.

"On July 11, 2019, the trial court issued a detailed ruling on submitted matter. The court made the following factual findings: '[Robert], age 73 years, is a high earner business man/investor; in 1984, [Robert] founded O'Hill Capital and serves as its General Partner; [Robert] (individually) has a 30% percent ownership interest. [Robert] and O'Hill Capital own fractional interests in a vast number of investments, including golf courses, strip malls, and many other improved and unimproved properties. O'Hill Capital's investments are numerous and diverse, and O'Hill Capital has many business partners. See trial exhibit 505, 506, 519, and 520. Given the complexities of this unique case, Andi retained CPA Drew Hunt and [Robert] retained CPA Glen Mehner. Meanwhile, during the marital years (disputed; 10+/- years) Andi did not work and stayed focused on domestic duties and 'primary parent' to the party's three children, . . . age 14, . . . , and . . . age 7. The marital standard of living ("MSOL") was very high; during the entire marriage, the parties resided within the exclusive enclave known as Emerald Bay, located in North Laguna Beach, a guard-gated, beachside community. The former family residence was at 95 Emerald Bay, a stunning, three story single family residence, 4,436 square feet, 4 bedroom, 5

3

baths, and a 180+ view of Emerald Bay cove, the home's value was estimated at 8+ million. Today, [Robert] lives at 95 Emerald Bay, alone, the home owned by an entity [Robert] controls, and the home free of debt. Meanwhile, Andi lives down the same street at 150 Emerald Bay, a one story rented home (2,156 square feet); 3-bedroom, 3 baths. Without quantifying the MSOL by monthly spending, the MSOL included frequent air travel by private/charter jet, a residential chef, private schools, high end vacations, domestic help, expensive cars, and expensive extracurricular activities, such as equestrian activities (two horses, stabled; average monthly expense = $5,000) and private golf lessons.'

"Throughout the hearing, Robert took the position that he no longer had the ability to borrow from his various entities in order to support that lifestyle. However, the court disbelieved Robert, concluding that Robert still had access to his past pattern and practice of 'borrowing amongst the mosaic of entities . . . .' The court's conclusion was based on specific examples. For instance, Robert's forensic accountant testified that in 2017 his income was approximately $43,000 per month, yet his lifestyle involved spending around $72,000 per month. Also, during the same time, Robert purchased a yacht with a $200,000 down payment. The court awarded to Andi $40,000 per month in 'family support' (pursuant to the parties' stipulation, this was combined spousal and child support). The court also ordered that Robert pay Andi $130,000 in past attorney fees and $10,000 per month for prospective attorney fees.

"On November 26, 2019, Andi filed an ex parte application to determine the support arrearage then owing by Robert and to obtain a charging order against Robert's interest in O Hill Capital.

"At a February 3, 2020, hearing on Andi's RFO, the trial court

4

found Robert owed Andi $136,000 in past due and unpaid family support, plus interest. The arrearage was undisputed. The court granted the charging order."

"[O]n November 7, 2022, the court ruled on what it described as Andi's pendente lite motion for supplemental attorney fees and costs, which is the subject of this appeal. Beginning in December 2022, the court vacated its prior award of $10,000 per month. Instead, it ordered Robert to pay $530,630 for past attorney fees and $240,996 for outstanding forensic accounting fees by January 24, 2023. It further ordered Robert to pay $150,000 for future fees by February 17, 2023.

"The court included an extensive set of findings and analysis to support the ruling. The court found that there was a gross disparity between the parties in access to funds to maintain counsel and experts. Andi was wholly dependent on Robert. Robert's income, 'while disputed and not yet determined,' was substantial. His separate property net worth, 'while disputed and not yet determined,' is very substantial. The court quoted Hunt's report from trial that Robert's net worth was approximately $32 million. The court further noted that all of Robert's fees were paid by O'Hill Capital, of which Robert was the managing partner. The court found that, '[b]ased on the totality of circumstances so far known to the court,' Robert had the ability to pay Andi's attorney fees. The court cited trial exhibits and Hunt's testimony for that finding, though it noted that the evidence was 'disputed' and that Robert's CPA 'has not yet testified.' It went on, 'From the evidence so far presented, and while disputed by [Robert], the court (so far) has drawn a reasonable inference [Robert] has access to funding vis-à-vis [O Hill Capital] . . . .'"

"The court found that any further delay in awarding Andi pendente lite attorney fees would infuse the proceedings with 'gross unfairness that if allowed, renders the ongoing trial presumptively . . . not a fair proceeding . . . .' The court observed that the parties' disparity in resources was exacerbated by the fact that Robert was approximately $900,000 in arrears on family support payments." (*O'Hill 1, supra,* G062146.)

Robert appealed from that order, and we dismissed the appeal as being from a non-final order on the ground that the court had reserved on the issue of the reasonableness of the fees.

"After the [prior] notice of appeal was filed, [but before we issued our prior opinion], the trial on spousal and child support, which had been paused, was completed, and the court issued a final statement of decision." "In that statement of decision, the court made strong findings against Robert, concluding that he has engaged in a consistent scheme to hide his income and assets from tax authorities and the court. 'The court formed the opinion that [Robert] minimizes or shelters income to reduce taxes owing and now, in this setting, shelters income in an effort to minimize or avoid his support obligation.' 'In this case, and over many years, [Robert] engaged in business practices designed to shelter income available for support by characterizing personal expenses as business expenses.' The court concluded Robert has substantial wealth: '[Robert] has indirect ownership interests in assets conservatively valued at $93 million, yet he professes to own nothing.' The court found Robert had personal assets and wealth amounting to approximately $32 million. The court specifically found that Andi's CPA Hunt was credible and that Robert's CPA was not credible because Robert's CPA relied on unreliable ledgers doctored by Robert." (*O'Hill 1, supra,* G062146.)

6

This brings us to the present appeal.

While the prior appeal was pending, Andi and Robert filed separate RFOs, which form the context for the present appeal. On May 26, 2023, Andi filed an RFO seeking to enforce the prior fee awards, which she declared had grown to over $1 million with accrued interest. She also sought the appointment of a receiver over O'Hill Capital.

On August 22, 2023, while Andi's enforcement RFO was pending, Robert filed a request for an ex parte order seeking, among other things, an order allowing for the sale of the 95 Emerald Bay residence on the condition that Andi receive $200,000 from the proceeds. Robert also sought to sell his 10 percent interest in Bear Brand Ranch on the condition that he pay $2,500 per month toward Andi's attorney fees. He requested a hearing on any relief not granted.

The court resolved both requests as follows: the court denied Andi's request for a receiver. However, it issued an order granting Robert's request to sell the residence on the additional condition that, instead of $200,000 going to Andi as Robert had requested, $500,000 go to Andi as a contribution toward attorney fees and costs.

Robert appealed from the court's ruling on his ex parte request.

DISCUSSION

Robert contends the court exceeded its authority and violated his due process rights by ordering that $500,000, rather than $200,000, of the residence-sale proceeds be paid to Andi even though neither party had requested that amount. He contends the court compounded its error by denying him a hearing on the matter.

We decline to address the merits of his claim and instead dismiss his appeal under the disentitlement doctrine. "The disentitlement doctrine

7

enables an appellate court to stay or to dismiss the appeal of a party who has refused to obey the superior court's legal orders." (*In re Marriage of Hofer* (2012) 208 Cal.App.4th 454, 459 [applying the doctrine to an appeal from an order for attorney fees].) The disentitlement doctrine is based on the equitable principle that a party cannot seek assistance from a court while simultaneously standing in an attitude of contempt to its legal orders and processes. (*Ibid.*) A formal judgment of contempt is not a prerequisite; we look to the record to determine whether a party's disobedience is willful. (*Id.* at p. 460.)

Here, the history of Robert's persistent violation of the court's attorney fee orders, combined with his immense wealth and full payment of his own attorney fees, clearly demonstrates that his violation is willful.

The record demonstrates a persistent pattern of disobedience spanning over four years. In July 2019, the trial court ordered Robert to pay $40,000 per month in family support, $130,000 in past fees, and $10,000 per month in prospective fees. By February 2020, he was already $136,000 in arrears, an amount the court found "undisputed." On November 7, 2022, the court ordered him to pay an additional $530,630 in past fees, $240,996 in accounting fees, and $150,000 in future fees. Yet as of May 2023, he had paid only $490,000 of the $1,451,626 ordered, leaving over $960,000 in arrears, which, with interest, was over $1 million.[1] Robert does not dispute that amount on appeal.

---

[1] We grant Andi's request for judicial notice of a subsequent order and judgment, dated February 7, 2025, finding Robert to be over $1.3 million in arrears.

8

Critically, the trial court made express findings that Robert had the means to comply. It credited Andi's forensic accountant, who placed his personal wealth at approximately $32 million, with indirect interests worth $93 million. The court also found that Robert had engaged in a "scheme" to hide assets from the court. The proof was simple: O'Hill Capital had fully funded Robert's own attorneys' fees, while he failed to pay fees ordered for Andi's counsel.

The court concluded that failing to enforce the fee orders "would infuse the proceedings with gross unfairness" and render the trial presumptively unfair. We agree. Failing to pay court ordered attorney fees cuts to the heart of the judicial process itself and gives Robert an unfair advantage. Although we recognize that Robert's ex parte request represented a partial effort to pay a fraction of the fees ordered, it was too little, too late.

## DISPOSITION

The appeal is dismissed. Andi shall recover her costs incurred on appeal.

SANCHEZ, J.

WE CONCUR:

MOTOIKE, ACTING P. J.

GOODING, J.

9